THE STATE OF OHIO, APPELLEE, *v.* PATTERSON, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* STEWART, APPELLANT.

[Cite as State v. Patterson (1982), 69 Ohio St. 2d 445.]

(Nos. 81-556 and 81-557—Decided February 24, 1982.)

446

*Mr. David E. Lighttiser,* prosecuting attorney, and *Mr. Ray Luther,* for appellee.

*Messrs. Mas & McGruder, Mr. Joseph L. Mas* (case No. 81-557) and *Ms. Jill Tripp McGruder* (case No. 81-556), for appellants.

*Per Curiam.* In *State* v. *Scott* (1982), 69 Ohio St. 2d 439, we observed that the nature of the substance delivered does not necessarily determine whether a defendant has "*offer*[ed] to sell a controlled substance." "A person can 'offer to sell a controlled substance' in violation of R. C. 2925.03(A)(1) without transferring a controlled substance to the buyer." *Scott, supra.* That same reasoning applies to cases arising under R. C. 2925.03(A)(1), (5) or (7), because the controlling language in all three subsections is the same: *offer to sell* a controlled substance.

The trial court, in cases Nos. 81-556 and 557, dismissed the indictments against appellants solely because the bills of particulars in both cases indicated that appellants did not transfer a controlled substance.[1] Appellants argue that the record does not indicate that either of them had the requisite criminal intent because controlled substances were not pres-

---

[1] We note, however, that a bill of particulars is not equivalent to a response to a request for discovery in a civil case. See *State* v. *Wilson* (1972), 29 Ohio St. 2d 203, 207.

ent. Yet, the language common to R. C. 2925.03(A)(1), (5) and (7) establishes two offenses: (1) knowingly selling a controlled substance; and (2) *knowingly offering* to sell a controlled substance.

"Knowingly" is an adverb which modifies the verb "offer." R. C. 2901.22(B) defines "knowingly"; and, as we pointed out in *Scott, supra,* "offer" is a common word which does not require statutory definition. It is clear on the face of the statute that a culpable mental state must exist with respect to the act of offering. See R. C. 2901.22(B). One's understanding of the nature of the substance does not necessarily determine whether he or she knowingly offered to sell a controlled substance. We will not read the additional element of knowledge of the nature of the substance into R. C. 2925.03 (A)(1), (5) or (7). That is, under our holding in *Scott, supra,* the failure to transfer a controlled substance is not an automatic or absolute defense to an indictment alleging that the defendant *offered to sell* a controlled substance.

Triers of fact should consider the totality of circumstances and decide whether, in a particular scenario, there is sufficient evidence to prove beyond a reasonable doubt that the accused has *knowingly offered* to sell a controlled substance. For example, the dialogue and course of conduct of the accused, as well as the nature of the goods transferred, may be relevant to this determination. Individually, no aspect of any of these examples is the ultimate fact. Collectively, they may or may not prove that the accused *knowingly offered* to sell a controlled substance. We modify the rulings of the Court of Appeals, therefore, and remand the causes to the trial court in order to permit a fact finder to make that decision in these cases.

Through R. C. Chapter 2925, the General Assembly has attempted to extirpate the malevolent traffic in drugs within Ohio. This is strong legislation, not an insipid gesture. R. C. 2925.03(A) criminalizes participation at all levels of commerce in drugs. Under R. C. 2925.03(A)(1), (5) or (7), one who *knowingly offers* to sell a controlled substance markets drugs. Failure to deliver does not *ipso facto* exonerate the accused. It would be improper for this court to amend that provision and insert a "fraudulent transfer" defense. The General Assembly easily could have done so had they been concerned with

448

protecting "consumers" or giving "con-men" different treatment. They did not, and neither should we.

Accordingly, we modify the judgments of the Court of Appeals and remand the causes for further proceedings consistent with this opinion.

*Judgment accordingly.*

CELEBREZZE, C. J., SWEENEY, LOCHER and KRUPANSKY, JJ., concur.

HOLMES, J., concurs in judgment.

W. BROWN and C. BROWN, JJ., dissent.

HOLMES, J., concurring in judgment.

I am in agreement that the General Assembly has within R. C. 2925.03(A) created two separate crimes: one, the knowing sale of a controlled substance; the other, the knowing offer to sell a controlled substance. In each of these criminal acts, as charged, there must be a sufficiency of proof offered by the state of all the elements of the crime, including that of intent to commit the act. Before a conviction for an offer to sell a controlled substance can be obtained, pursuant to R. C. 2925.03 (A), the state must present evidence to prove that at the time of the offer the defendant intended to make a sale of an actual controlled drug substance and that he reasonably had the ability to effect such sale.

In a review of the case law in other states on this related subject, I find that there are also differing views of the interpretation of these types of statutes. In *Shanks* v. *Commonwealth* (Ky. 1971), 463 S.W. 2d 312, dealing with a statute that made it a violation to offer for sale a narcotic, and where the defendant, as to one of the counts, claimed that he knew he was selling a non-controlled substance, the court held that the defendant could not be convicted on the basis of absence of the *mens rea.* In that opinion, the court, at page 315, stated:

"We are of the opinion that under the act if one offers for sale what he reasonably believes to be a narcotic drug and it later turns out in fact not to be a narcotic, this is sufficient to support a conviction. For here we have present the union of an act and a criminal intent, both of which are normally required to constitute a crime. This is not true of the case before us, for

the reason that Shanks knew the material sold was sugar and not a narcotic. We do not believe this will support a conviction under the statute. Had he thought the material to be a narcotic the case would be different. * * * "

In the same manner, a New York court, in *People* v. *Rosenthal* (1977), 91 Misc. 2d 750, 398 N.Y. Supp. 2d 639, interpreting that state's law relative to the offer of sale of a controlled substance, held that scienter as to the specific item being offered was necessary for conviction. The court, at page 641, stated that:

"The applicable statutes in the instant case speak of a knowing offer, and that knowledge must extend to each and every part of the transaction alleged to have been criminal. Thus, defendant must have known that he was offering to sell a narcotic drug if he is to suffer criminal penalty. However, the knowledge by defendant that the substance sold was non-narcotic (hay fever medicine) coupled with the delivery of that non-narcotic substance militates against a finding of such knowledge. * * * "

The Supreme Court of Illinois, in *People* v. *Lott* (1962), 24 Ill. 2d 188, 181 N.E. 2d 112, reviewed and reversed the conviction of a defendant based upon the alleged unlawful sale of narcotics where the record showed that the substance involved was not a prohibited substance. The state of Illinois had a separate statute relating to the offering of a narcotic drug when in fact it was not. The Illinois court pointed out in its opinion, at pages 190-191, that:

"The crime of selling an article under the representation that it is a narcotic drug, when in fact it is not, is separate and distinct from the charges of either selling or possessing or dispensing a narcotic drug. This crime is defined in section 38 of the Uniform Narcotic Drug Act. Ill. Rev. Stat. 1959, chap. 38, par. 192.28-38."

In the case of *People* v. *Lawson* (1975), 84 Misc. 2d 24, 374 N.Y. Supp. 2d 270, the court, in finding that a naked offer or agreement was insufficient to hold the defendant upon an indictment charging sale of a dangerous drug (which by definition in a New York statute included an offer to sell), stated, at pages 25-26:

"Although the quoted statutes, which were read to the

grand jurors, seem on their face to proscribe the mere knowing utterance of words constituting an offer or agreement, the People have conceded that, 'A specific intent to sell narcotics is an implicit and essential element of the crime of offering to sell narcotics * * * [for] it is senseless to believe that the Legislature intended to punish as sellers offerors who were merely puffing or bragging and had no intention to consummate the sale.' "

Upon a review of all of the various approaches to resolve this issue, I conclude that the reasonable interpretation of R. C. 2925.03(A) requires the review of the evidence in each case by the trier of the fact to determine whether upon the facts presented, the trier could find beyond a reasonable doubt that the substance offered for sale was a controlled substance, or thought by the defendant to be a controlled substance. Such approach is a variation from my position as expressed in my dissent to *State* v. *Mosley* (1977), 55 Ohio App. 2d 178; however, I believe this approach will best serve the legislative purpose of this statute.

Accordingly, where the defendant has been charged under R. C. 2925.03(A)(1), (5) or (7), for the crime of offering to sell a controlled substance, the state must establish a specific intent of the defendant as to the substance offered. However, this is not to say that the corpus delicti is necessary in every instance. The state may establish intent without being able to produce any identifiable substance as the specific subject of the offer. Absent evidence to the contrary presented by the defendant, the utterance of an offer to sell a controlled substance may be sufficient to support the charge. In such an instance where no substance is produced, a number of factors may reasonably be considered by the trier of the fact to determine the intent of the defendant, such as the terms of the offer, the prior history and dealings of the defendant, and his subsequent activities; also, the manner and efforts of the defendant in obtaining the drugs, and the reason for a failure to transfer the bona fide controlled substance.

Following the general procedure, where the state has presented evidence of the utterance of the offer to sell a controlled substance, and the accused then goes forward and presents other testimony and evidence relative to whether the

offer to sell was of a controlled substance, the trier of the fact must take into consideration such other evidence in finding beyond a reasonable doubt that the defendant is guilty of knowingly offering a controlled substance for sale.

Where it is shown that the state has conceded after testing the questioned substance that it has been found not to be a controlled substance, as a matter of law, the record will not support a finding beyond a reasonable doubt that there has been a knowing offer to sell a controlled substance contrary to R. C. 2925.03(A)(1), (5) or (7), unless the state proves beyond a reasonable doubt that the defendant thought the subject of such offer was a controlled substance.

The statute involved here must be interpreted reasonably to have been enacted to control the trafficking in drugs. It was not intended as a consumer protection law for those who might be defrauded in the attempted purchase of a controlled substance.[2] If the General Assembly had intended to provide for the separate offense of offering to sell a substance falsely represented to be a controlled substance, such could have been provided for. However, it was not so provided.[3]

Further, the General Assembly surely could not have intended identical penalties for fraudulent drug sales as for actual drug sales in that there are penalties differing in the severity depending upon the nature and the amount of the substance sold or offered for sale. There appears to be no reasonable justification for imposing a more severe penalty on a person who solely with the intent of swindling a buyer delivers baking powder for promised heroin, than would be the penalty for the person who promises to deliver marijuana but, instead, intentionally delivers crushed maple leaves. I submit

---

[2] Judge Grey, in *State* v. *Hughes* (May 21, 1980), No. 746, Ct. App. for Ross Co., unreported, stated, in like manner:

"Before a conviction under the 'offer-to-sell' provisions of Ohio Revised Code Section 2925.03 may lie, the state must present evidence to prove that at the time of the offer, the defendant intended to make a sale of an actual controlled drug substance and had the present ability to effect such a sale. A proper construction of the statute requires such proof. To hold otherwise would transform the statute into consumer protection legislation for drug buyers and would vitiate the legislative purpose behind passage of the statute."

[3] Other states have adopted statutes such as these. See, *e.g.,* Cal. Health and Safety Code, Section 11355; Ill. Rev. Stat., Chapter 56½, Paragraph 1404.

that the harm to society generally is no greater because the offeror utters the word "heroin" rather than the word "marijuana."

The trial court in the instant cases granted the motions to dismiss the indictments without taking any evidence upon, or determining, the issue of the scienter of the defendants. There was no determination as to whether the surrounding circumstances would indicate that the defendants intended to offer the sale of controlled substances. Since there was no such determination, I concur with the majority that the matter should be remanded to the trial court.

CLIFFORD F. BROWN, J., dissenting. In both cases, I dissent for the reasons expressed in my dissent today in *State* v. *Scott* (1982), 69 Ohio St. 2d 439, 443. A sale or offer to sell a controlled substance was not made in any of these cases within the meaning of R. C. 2925.03(A)(1)(5) or (7), since the goods transferred were not controlled substances, regardless of what defendants thought they were selling. To conclude otherwise violates the principle that criminal statutes defining offenses must be strictly construed against the state and liberally construed in favor of the accused. R. C. 2901.04(A).

W. BROWN, J., concurs in the foregoing dissenting opinion.