In this case, Thomas E. Jordan appeals from his conviction for possession of dangerous ordnance in violation of R.C. 2923.17(A). Jordan was convicted after a bench trial in the Montgomery County Court of Common Pleas. The evidence, which was presented through stipulated documents rather than testimony, showed that Jordan was discovered by police carrying a sawed-off shotgun, defined as a shotgun with a barrel less than eighteen inches long, under R.C. 2923.11(K)(1).
Jordan's counsel argued at trial that the state failed to prove mensrea because it failed to prove that he knew that the barrel of his gun was less than eighteen inches long. In fact, the trial court expressly found that the state had failed to prove Jordan's knowledge of the gun's illegal length. Nevertheless, the trial court held that the state did not need to prove such knowledge. It concluded that the state only needed to show that Jordan knew that he was carrying a gun. We hold, however, the mens rea
requirement of knowledge in R.C. 2923.17(A) requires the state to prove that the accused had knowledge of those characteristics that made the contraband in his possession dangerous ordnance. Thus, in this case, the state needed to prove that Jordan was aware that his gun barrel was probably less than eighteen inches long. Based on the trial court finding that the state failed to prove Jordan's knowledge, we must reverse the conviction.
 I
Jordan was indicted on September 8, 1998. He elected to try his case to the bench, and trial was held on January 29, 1998. All evidence at trial was presented through three stipulated documents rather than through testimony. Joint exhibit one portrayed all of the facts leading up to Jordan's indictment. It read as follows:
 1. All events relative hereto occurred within the City of Dayton, County of Montgomery, State of Ohio;
 2. On June 19, 1998, at approximately 1845 hours, Dayton Police Officers Rike and Oldham responded to a call of shots fired in the area of 400 Dearborn;
 3. Dispatch also informed the officers of someone with a shotgun, described as a black male in an alley;
 4. Upon arrival, a group of people pointed toward Defendant, Thomas Eugene Jordan, who was in an alley, and said he had a shotgun;
 5. As the officers entered the alley they saw a black male matching the description given by dispatch, carrying a shotgun, and the black male began to run;
 6. The officer pursued Defendant, eventually ordering him, at gun point, to drop the shotgun;
 7. As Defendant began to put down the shotgun, the shotgun fired, and no one was injured;
 8. It appeared to the officers that the end of the barrel of the shotgun exploded when the gun fired;
9. Defendant was placed under arrest;
10. The shotgun was seized;
11. The shotgun was found to contain one spent shotgun shell;
 12. The shotgun was examined and referred to by Chris Monturo in his report dated July 1, 1998, which is attached hereto and entirely incorporated herein;
 13. The shotgun was examined and referred to by Larry Dehus in his report dated November 12, 1998, which is attached hereto and entirely incorporated herein;
 Joint exhibit two was the lab report of Chris Monturo of the Miami Valley regional Crime Laboratory, referred to in paragraph twelve of exhibit one. It stated that the shotgun was a Winchester Model 200 12-gauge shotgun, serial number L 638250, and it was operable. Monturo found that the shotgun had a barrel that was 17 _ inches long with an overall length of 29 1/2 inches. Joint exhibit three was the lab report of Larry Dehus, Defendant's expert witness. Dehus measured the shotgun barrel at 17 _ inches, and the overall length at 30 inches.
Trial consisted largely of closing arguments, because no testimony was given. Defense counsel argued chiefly that the state failed to provemens rea as to an essential element of the crime, namely whether Jordan knew that his shotgun's barrel was less than eighteen inches long. Counsel asserted that the stipulated facts were insufficient to prove such knowledge. The state countered that it was only necessary to prove knowledge in regard to possession of the weapon, not in regard to the characteristic that made the weapon a dangerous ordnance.
The trial court issued a written opinion containing its verdict on February 2, 1999. The trial court agreed with defense counsel that the state had failed to prove "that Jordan knew, or was aware of the probability, that the barrel of his shotgun was less than eighteen inches long." Nevertheless, the trial court agreed with the state that such proof was unnecessary. The trial court held that the state only had to prove (1) that Jordan knew he was carrying a weapon and (2) that the gun was illegal ordnance. Because the state met that burden, the trial court found Jordan guilty of Unlawful Possession of Dangerous Ordnance, in violation of R.C.2923.17(A), a fifth degree felony. On March 9, 1999, the trial court sentenced Jordan to six months imprisonment.
Jordan now timely appeals from the judgment of conviction.
 II A
Jordan raises a single assignment of error on appeal. He asserts that:
 THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF R.C. 2923.17(A), POSSESSION OF A DANGEROUS ORDNANCE, WHEN THE COURT ALSO FOUND THAT THE STATE DID NOT PROVE AN ESSENTIAL ELEMENT OF THE CRIME.
 With this assignment of error, Jordan renews his argument that the state failed to prove that he had the proper mens rea to be convicted under R.C. 2923.17(A) for carrying dangerous ordnance.
R.C. 2923.11(K)(1) defines "dangerous ordnance" to include "any automatic or sawed-off firearm." Subsection (F) of the same statute further defines a "sawed-off firearm" as "a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall." Both parties agree that the weapon Jordan was carrying when he was discovered by the police was a shotgun with a barrel less than eighteen inches long. Thus, it was "dangerous ordnance" under the statute.
R.C. 2923.17(A) makes it a crime to "knowingly acquire, have, carry, or use any dangerous ordnance." The word "knowingly" appearing in the statute establishes the mens rea requirement of knowledge, as defined in R.C. 2901.22(B). That statute provides that:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 The essential question before us in the instant case is the extent of the mens rea requirement in R.C. 2923.17: what elements of that crime must a person have knowledge of in order to be guilty under the statute?
Jordan argues that the word "knowingly" as it appears in the statute applies not only to the verbs "acquire," "have," "carry," and "use," but also to the object of those verbs, "dangerous ordnance." Thus, he claims that, in order to commit a crime under the statute, it is necessary for a person to know that the object he carries has the qualities of dangerous ordnance. Jordan relies heavily on the persuasive authority of Staples v.United States (1994), 511 U.S. 600, 618-619,114 S.Ct. 1793, 1806, 128 L.Ed.2d 608, in which the Supreme Court of the United States interpreted an analogous federal statute, the National Firearms Act, Section 5861(d), Title 26, U.S. Code, to require proof that a defendant knew his weapon possessed the characteristics that made it illegal even though that statute was silent regarding any mens rea requirement.
The state advances a more restrictive view of how the word "knowingly" operates within the statute. It contends that the adverb "knowingly," when used in a statute outlawing the possession of some object, only modifies the verb denoting possession and not its objects. In support of its position, the state cites a number of Ohio cases that it believes support a grammatically restrictive understanding of how courts should interpret adverbs denoting mens rea in statutes defining possessory crimes.State v. Bryant (Aug. 6 1990), Fayette App. No. CA89-09-019, unreported, and State v. Burkhart (Nov. 21, 1986), Wood App. No. WD-86-7, unreported (both interpreting 2923.17); see also State v.Patterson (1982), 69 Ohio St.2d 445, 447 (interpreting R.C. 2925.03, drug-trafficking statute).
State v. Burkhart, cited by the state, interprets the same statute that is at issue in the instant case, R.C. 2923.17(A).Burkhart, however, is largely inapposite to the issue raised by Jordan in this appeal. Nevertheless, it may be worthwhile, for the sake of clarity, to distinguish the question in Burkhart from the one before us in the instant case.
In Burkhart, the Sixth District Court of Appeals rejected the appellant's claim that the word "knowingly" in R.C. 2923.17(A) requires the state to prove that the accused knew that his gun was illegal. The defendant in Burkhart argued that he should have been permitted to put on evidence showing that he was unaware that his gun was an illegal weapon under Ohio law. That argument, however, conflicts with the deeply rooted presumption that ignorance of the law is no defense to criminal prosecution. See Staples, 511 U.S. at 1805, fn. 3 (Ginsburg, J., concurring). As the Ohio Supreme Court has declared, "Knowledge that certain conduct is unlawful is not a necessary element for conviction based on actions done `knowingly.'" State v. Pinkney (1988), 36 Ohio St.3d 190,198. To recognize knowledge that an act was illegal as a prerequisite for criminal liability would be the same as permitting the defense of mistake of law. It is well-settled that the mistake-of-law defense is not recognized in Ohio. Id. The Burkhart court, therefore, properly rejected the defendant's argument in that case.
Jordan, on the other hand, has deliberately not raised such an argument. His argument is that the state had to prove, not that he knew that his gun was illegal, but that he knew that his gun possessed certain characteristics that made it illegal, even if he was unaware that such characteristics were proscribed by law. These are fundamentally different arguments. See Staples,511 U.S. at 621-622, 622 fn. 3 (Ginsburg, J., concurring). While the defendant in Burkhart attempted to raise the defense of mistake of law, the question raised by Jordan is one of mistake of fact. Mistake of fact may negate a showing of mens rea where there is a requirement that the defendant acted "knowingly." State v. Snowden (1982),7 Ohio App.3d 358, 363.
The question, therefore, is whether the mens rea requirement of knowledge in R.C. 2923.17(A) extends to more than the accused's mere possession of an item. At least one Ohio court has concluded that knowledge of possession is alone sufficient for criminal liability under R.C. 2923.17(A). State v. Bryant (Aug. 6, 1990), Fayette App. No. CA89-09-019, unreported, at 3. The Bryant court's conclusion appears to have been based on the notion that, grammatically, the adverb "knowingly" modifies the verbs in the statute and not their object. See id. Ultimately, we disagree with the Bryant
court's reasoning. That court's reliance on a strict grammatical construction of the statute appears to us to be misplaced.
Indeed, grammar alone does not provide us with a definitive rule of interpretation one way or the other. We may take for example a simple sentence like: "The boy knowingly threw the rock at the window." It is, in one sense, accurate to say that the adverb "knowingly" modifies the verb "threw." It is just as accurate, however, to say that the adverb modifies the entire predicate: "threw the rock at the window." The latter characterization, moreover, more accurately captures the meaning of the sentence. A boy does not necessarily commit a wrong when he knowingly throws something. It is the boy who throws a ball at a window while knowing the inevitable result that is the naughty one. The rules of English grammar do not require one to repeat the same adverb before every word in the predicate that one wants to be affected by it.
In any event, the value of engaging in a discussion of the fine points of grammar when interpreting a criminal statute is subject to serious question. Criminal statutes are intended to inform citizens of average intelligence what activity is being forbidden. United States v. Harriss (1954),347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996. Special knowledge of grammar theory should not be necessary to an understanding of criminal statutes.
Putting such matters aside, the language in question — "knowingly * * * carry * * * any dangerous ordnance" — at the very least, admits of an interpretation under which the defendant must know that the object in his possession is dangerous ordnance. Where a criminal statute is ambiguous, R.C. 2901.04(A) mandates that: "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." Because an ambiguity exists regarding the extent of the mens rea requirement in R.C. 2923.17(A), we are required by this statutory rule of lenity to construe the language in a way that favors the defendant. Such a construction extends the knowledge requirement to the object of possession as well as the act of possession itself.
The approach of the Model Penal Code, here, is instructive. The Code includes the following provision:
 (4) Prescribed Culpability Requirement Applies to All Material Elements. When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.
American Law Institute, Modal Penal Code and Commentaries (1985) 226, Section 2.02.
The commentaries published along with the Model Code explain how this rule of interpretation is supposed to operate. The commentary authors make the following remarks:
 The code proceeds in the view that if a particular kind of culpability has been articulated at all by the legislature as sufficient with respect to any element of the offense, the assumption is that it was meant to apply to all material elements. Hence this construction is required, unless a "contrary purpose plainly appears." When a distinction is intended, as it often is, proper drafting ought to make it clear.
Two examples may help to clarify the intended scope of the provision and to illustrate its relationship with Subsection 3. False imprisonment is defined by Section 212.3 of the Model Code to include one who "knowingly restrains another unlawfully so as to interfere substantially with his liberty." Plainly, the word "knowingly" is intended to modify restraint, so that the actor must, in order to be convicted under this section, know that he is restraining his victim. The question of whether "knowingly" also qualifies the unlawful character of the restraint is not clearly answered by the definition of the offense, but is answered in the affirmative by this subsection under discussion.
To be contrasted with this illustration is the case of burglary, as defined in Section 222.1. The offense includes one who "enters a building . . . with purpose to commit a crime therein. . . ." The grading provisions make burglary a felony of the second degree if the offense is perpetrated "in the dwelling of another at night." Since an actor must have a "purpose" to commit a crime within a building to be guilty of burglary when he enters the building, the definition of the offense might be thought ambiguous as to what culpability level applies to elements like "dwelling house" and "night." Must the actor know that he is entering a dwelling house in order to be convicted of a second degree felony, or is some lesser culpability level sufficient?
* * * [R]ecklessness should suffice in the absence of special provision to the contrary. Subsection (4) does not produce a contrary result, since it is designed to apply, as noted above, only to offenses where a particular culpability requirement is stated in such a way as to make it unclear whether the requirement applies to all of the offenses of an offense or only to the material elements of an offense or only to the material element it introduces. In the burglary illustration, the phrase `with purpose to commit a crime therein' plainly does not make purpose the required level of culpability with respect to all material elements of the offense.
American Law Institute, Modal Penal Code and Commentaries (1985) 246, Section 2.02.
Ohio, for the most part, has adopted the culpability standards of the Model Penal Code. See R.C. 2901.21 and 2901.22; State v. Brewer
(1994), 96 Ohio App.3d 413, 416. Ohio's culpability statutes, however, do not contain any provision analogous to Section 2.02(4), as the authors of the Commentary to the Model Penal Code have noted. American Law Institute, Modal Penal Code and Commentaries (1985) 246-247, fn. 38, Section 2.02. Nonetheless, we are not aware that Ohio's failure to adopt the provision was the result of any legislative animus against the rule of interpretation announced in that subsection. At least one other Ohio court has turned to Section 2.02(4) of the Model Code when confronted with an ambiguous culpability requirement. State v. Lundgren (Apr. 22, 1994), Lake App. No. 90-L-15-125, unreported, at 7-8. We too find this section persuasive. Although not expressly adopted in the Revised Code, the Model Penal Code's rule of interpretation is consistent with the rule of lenity adopted at R.C. 2901.04(A). A contrary rule, like the one advanced by the state, would appear to violate that statute.
Nevertheless, the state has maintained that the Ohio Supreme Court's opinion in State v. Patterson (1982), 69 Ohio St.2d 445
(per curiam) stands for the proposition that the word "knowingly" in a criminal statute should be interpreted as modifying only the verb. See id.
at 447. Patterson involved defendants in two different cases who had sold to undercover agents substances represented as being illegal drugs, but which were, once tested, found not to be controlled substances. Id.
at 445. They were then both indicted for offering to sell controlled substances in violation of R.C. 2925.03(A). At the simplest level, then, Patterson is distinguishable from the instant case because the Supreme Court was interpreting a different statute. Furthermore, when criminal offenses involve dangerous drugs, courts have been less free in their recognition of mens rea requirements. SeeStaples, 511 U.S. at 610. Thus, Patterson may be distinguished on that ground as well.
More fundamentally, however, we do not read Patterson as standing for the grammatically restrictive rule of interpretation advanced by the state. Certainly, the Patterson Court remarked that "`[k]nowingly' is an adverb which modifies the verb `offer'" in R.C. 2925.03(A).69 Ohio St.2d at 447. The Court's purpose in doing so, however, was to point out that the crime itself is defined by the word "offer." See id.
The Revised Code makes it a crime not only to sell controlled substances, but also to offer to sell them. Thus, as the court reasoned, "One's understanding of the nature of the substance does not necessarily determine whether he or she knowingly offered to sell a controlled substance." Stated another way, once a person has offered to sell a controlled substance, the crime has been committed, even if that person never intended to complete the sale, or if he was mistaken regarding the nature of the substance he ultimately intended to convey. See id. One's lack of knowledge regarding the character or availability of a substance that would be conveyed in the future does not prevent one from knowingly offering to sell it in the present. Id. Thus, as long as a person knew what he was offering to sell at the time of the offer, he is guilty of the crime defined in R.C. 2925.03(A). Id.
Contrary to the state's grammatically restrictive reading, under thePatterson holding, the word "knowingly" still establishes amens rea requirement regarding the objects of the verb "offer." Certainly, under Patterson, one must know that one is offeringto sell something. See id. Furthermore, one must know that he is offering to sell a controlled substance. Thus, the court wrote:
 Triers of fact should consider the totality of circumstances and decide whether, in a particular scenario, there is sufficient evidence to prove beyond a reasonable doubt that the accused has knowingly offered to sell a controlled substance. For example, the dialogue and course of conduct of the accused, as well as the nature of the goods transferred, may be relevant to this determination. Individually, no aspect of any of these examples is the ultimate fact. Collectively, they may or may not prove that the accused knowingly offered to sell a controlled substance.
 Id. From this passage, it is evident that mere knowledge that one has made an offer to sell some substance of some indefinite character, would not be enough to establish guilt. One must, instead, know that he is offering to sell a controlled substance.
If Patterson had really held that the mens rea requirement does not extend to the objects of a verb, as the state has argued, a person would be guilty of offering to sell a controlled substance in Ohio if he offered to sell something that he thought was harmless (e.g., sugar), but which was in fact turned out to be a controlled substance (e.g., opium). See, e.g., United States v. Balint (1922), 258 U.S. 250,42 S.Ct. 301, 66 L.Ed. 604. This was manifestly not the holding ofPatterson. See 69 Ohio St.2d at 447.
In State v. Dempsey (1970), 22 Ohio St.2d 219, 222, the Ohio Supreme Court held that "the element of scienter in a narcotics possession case consists of two branches; that the defendant knew that the substance was in his possession, and that he knew the substance was a narcotic." It remains true in Ohio that, to be guilty of nearly all drug offenses, the accused must have been aware of the nature of the substance that he was dealing with. Thus, in State v. Lowe (1993), 86 Ohio App.3d 749,755, the Fourth District Court of Appeals held that a person could not be convicted of drug possession based merely the presence of cocaine metabolites in his urine. The Lowe court reasoned that the state could not prove the mens rea requirement of knowledge because the accused might have ingested the controlled substance by accident, by mistake, or by involuntary means. Id. at 756. Thus, it is insufficient that one knows he possessed or used a substance, unless he also knows what the substance was. See id. To omit that additional mens rea
requirement is to create, in essence, a strict liability offense. See id. at 756.
Here, the state asks us to read the dangerous ordnance statute as making it a crime to carry something even if accused had no knowledge of the character of the thing that he possessed. We do not accept such an interpretation. Under the normal rules for construing criminal statutes, an announced culpability standard should apply to all the material elements of an offense — whether those elements are described by verbs or by the objects of verbs — unless a contrary purpose plainly appears in the statute. Therefore, we agree with Jordan that the state's burden of provingmens rea includes the burden of proving that the accused knew that any weapon he carried possessed the characteristics that, under the law, made it a dangerous ordnance. It is worth reiterating, however, that the state does not need to prove that the accused knew that those characteristics made the weapon illegal. State v. Burkhart (Nov. 21, 1986), Wood App. No. WD-86-7, unreported.
 B
Our recognition of a mens rea requirement in connection with the illegal characteristics of dangerous ordnance under R.C. 2923.17
finds further support in the rule that favors limiting the scope of criminal punishment to those who have a culpable mental state. See R.C. 2901.21;State v. Brewer (1994), 96 Ohio App.3d 413, 415-416; see alsoUnited States v. United States Gypsum Co. (1978), 438 U.S. 422,436, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 ("The existence of a mens rea
requirement is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.") In contrast, the interpretation advanced by the state would effectively make violation of the statute a strict liability offense, even though a particular mental-culpability standard is expressly announced in the language of the statute. The state has suggested that a mens rea requirement only touching the act of possession would protect some apparently innocent parties from conviction. Those protected would be mainly individuals who came into control of dangerous ordnance without knowing that they possessed the illegal object at all, for example someone who had a sawed-off shotgun stashed in his house without his knowledge. This, however, is a rather ineffectual form of themens rea requirement. Cases in which one might "acquire, have, carry, or use any dangerous ordnance" without knowledge that he possessed at least something do not seem likely to occur very often.
We are far more troubled by the circumstance in which a person believes that some object that he acquires, holds, or uses is innocent because he is unaware of its nature or unaware of those characteristics that made it illegal. The statute, for example, includes a number of explosive chemicals, like nitroglycerin, among the list of dangerous ordnance. According to the state's reading, if a person wanted to purchase glycerin, but received instead, by accident, nitroglycerin, that person would be guilty of a violation of R.C. 2923.11, a fifth degree felony. The state would then have us find criminal mens rea because that person knew that he had acquired something and that something later turned out to be dangerous ordnance. We, however, do not see how such a person could possibly have criminal culpability in the sense required under R.C.2901.22(B).
Here, the United States Supreme Court's opinion in Staples v. UnitedStates (1994), 511 U.S. 600, 618-619, 114 S.Ct. 1793, 1806,128 L.Ed.2d 608, is especially instructive. The defendant in Staples
was indicted for violation of the National Firearms Act, Section 5861(d), Title 26, U.S. Code. He was discovered with a semiautomatic rifle that had been modified so that it could operate as an automatic weapon.511 U.S. at 603. Section 5861(d) makes it a federal crime, punishable by up to ten years in prison, for a person to possess an automatic weapon without proper registration, id. at 602-603, but the statute contains no expressmens rea requirement, id. at 605. The defendant claimed that he was unaware of his rifle's ability to fire more than one bullet with one pull of the trigger, as an automatic weapon does by definition. He stated that, in his experience, the rifle fired only semiautomatically, and even then imperfectly, often requiring him to remove a spent casing and chamber the next round by hand. Thus, he requested a jury instruction placing the burden of proof on the government to show beyond a reasonable doubt that he knew about his rifle's ability to fire automatically. Id. at 603-604. Instead, the district court instructed the jury that it was enough that the defendant knew he was dealing with a dangerous device likely to be regulated. Ultimately, the Supreme Court reversed the conviction. Id.
at 604.
The Supreme Court held that, even though the statute was silent regarding the level of mental culpability required for a violation, it would read into the statute a mens rea requirement of knowledge. Id.
at 619-620. The Court noted that, under the common law, all crimes contained as a necessary element some level of mental culpability. Id. at 605. That common-law rule survives today as a presumption that statutory crimes maintain an element of mens rea absent some direct indication to the contrary. With few exceptions, as the Court recognized, criminal liability only falls where the accused "knows the facts that make his conduct fit the definition of the offense." Id. at 607, fn. 3.
The Staples Court then distinguished the class of "public welfare offenses" creating a form of strict liability, which it had recognized in other contexts. Id. at 606-607. For such crimes, it is not necessary for the accused to have knowledge of the facts that made his conduct illegal; it is sufficient merely that he knew he was "dealing with a dangerous device of a character that place[d] him `in responsible relation to a public danger." Id. at 607, quoting United States v.Dotterweich (1943), 320 U.S. 277, 281, 64 S.Ct. 134, 136, 88 L.Ed. 48. The Supreme Court has recognized such crimes only in "limited circumstances." Id., quoting United States Gypsum,438 U.S. at 437. Generally, public welfare crimes only have light penalties attached to them, such as fines or short jail sentences. Id. at 616. The federal gun law, on the other hand, made possession of an unregistered machinegun a felony with a penalty of up to ten years imprisonment. Id. The Court has also sometimes dispensed withmens rea where the subject matter was so heavily regulated that the accused would be put on notice that his conduct would likely be illegal. See id. at 608-610. Possession of guns, however, is traditionally legal and blameless conduct in the United States. Id. at 613-614. Thus, the court was not persuaded to treat Section 5861(d) of the Firearms Registration Act as a public welfare offense.
Ultimately the Court found it "unthinkable" that Congress could intend to impose severe criminal sanctions "on a class of persons whose mental state — ignorance of the characteristics of weapons in their possession — makes their actions entirely innocent." Id. at 614-615. Thus, it held that the Government had to prove that the defendant knew about the features of his rifle that brought it within the scope of the act.Id. at 619.
Here, the state asks us to interpret a similar statute so that it imposes a felony sentence even when the mental state of the accused is, as theStaples Court remarked, entirely innocent. It is not a violation of R.C. 2923.17 to possess a shotgun with an eighteen-inch barrel or longer. Thus, a person who owns such a weapon is not a criminal. A person who firmly believes that his shotgun's barrel is more than eighteen inches long, even if it is not, knows no more than the person who correctly believes that his shotgun is of legal length. Thus, they have the same relevant mental culpability. Yet, the state would have us treat the latter person as a felon. Undeniably this is a form of strict liability, which we must reject as inconsistent with the presumption in favor of recognizingmens rea.
Particularly illuminating in this regard is that, in Staples,
the Federal Government advocated a kind of mens rea requirement significantly less restrictive than the one advanced by the state in this case, and the Court still rejected that argument. See Staples,511 U.S. at 621 (Ginsburg, J., concurring). Justice Ginsburg, in her concurring opinion, clarified the boundaries of the debate:
 The question before us is not whether knowledge of possession is required, but what level of knowledge suffices: (1) knowledge simply of possession of the object; (2) knowledge, in addition, that the object is a dangerous weapon; (3) knowledge, beyond dangerousness, of the characteristics that render the object subject to regulation, for example awareness that the weapon is a machinegun.
Recognizing that the first reading effectively dispenses with mens rea, the Government adopts the second, contending that it avoids criminalizing `apparently innocent conduct' * * *."
Id., (Ginsburg, J., concurring), quoting Liparota v. UnitedStates (1985), 471 U.S. 419, 426, 105 S.Ct. 2084, 2088,85 L.Ed.2d 854. Here, the state has adopted the first position, namely that knowledge of possession alone is sufficient. As Justice Ginsburg remarked, however, that view effectively dispenses with mens rea altogether. In the particular context of the Ohio statute, in which the legislature expressly incorporated a mens rea requirement of knowledge, such an interpretation cannot be admitted. The concurring opinion, then, like the majority opinion, rejected the second view also, because it fails to "shield people against punishment for apparently innocent activity." Id. at 622.
The trial court attempted to distinguish the Staples opinion on two fronts: first, because it is not binding authority as it involved interpretation a federal law and, second, because the law at issue inStaples, unlike the Ohio statute, was silent about makingmens rea an element of the offense. In regard to the first point, we recognize that the Staples decision is not, in any sense, binding authority in this case. Nevertheless, we find its analysis ofmens rea very persuasive. Certainly the Court's reasoning inStaples is applicable to the present appeal, if not its holding. Regarding the second point, the presence of the word "knowingly" in the Ohio statute actually makes it less problematic for the defendant than the federal statute at issue in Staples. By incorporating the word "knowingly," the Ohio General Assembly expressly indicated its intention to punish only those parties who have the requisite mental culpability. In light of that express intention, it would be curious if the proper interpretation of the statute was one imposing a form of strict criminal liability.
Our court has been reluctant to recognize strict liability even where the crime was a first degree misdemeanor carrying a potential prison term of up to six months. See State v. Brewer (1994) 96 Ohio App.3d 413, 416. In Brewer we recognized that penalties involving prison sentences are usually inconsistent with statutes delineating public welfare offenses for which there is no requisite mens rea. Id. Here, by way of contrast, we have a felony offense with a possible prison term of up to twelve months. The proper interpretation of such a statute must be one that establishes an actual and effective mens rea requirement.
Again, we hold that the state must prove that one accused of violating R.C. 2923.17(A) had knowledge of the facts that made his conduct illegal. In this case, that means that the state had to prove that Jordan knew that his shotgun had a barrel less than eighteen inches long.
 C.
In light of our holding that the state had to prove that Jordan had knowledge of the illegal characteristic of his weapon, we find that the trial court erred, and we must reverse the judgment. Furthermore, because the court expressly found that the state failed to prove such knowledge beyond a reasonable doubt, we do not remand the case for another trial. Instead, we must vacate the conviction and order the defendant discharged.
In its written decision, the trial court expressly found: "The State didnot prove that Jordan knew, or was aware of the probability, that the barrel of his shotgun was less than eighteen inches long." (Emphasissic.) This was the trial court's determination of a factual question pertaining to an essential element of the crime. The state has not challenged that determination. Therefore, we must defer to the trial court's finding in our resolution of the case. Even if the state had assigned error in the factual determination, it may have been estopped from retrying the issue, a question we do not reach here. See State v. Lovejoy (1997),79 Ohio St.3d 440, 443, ("Once a tribunal has decided an issue of ultimate fact in the defendant's favor, the double jeopardy doctrine also precludes a second jury from ever considering that same or identical issue in a later trial."), citing Dowling v. United States (1990),493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708, 717.
In this connection, the state has argued that, if it bears the burden of proving that the accused had knowledge of the illegal characteristics of any dangerous ordnance, it will be nearly impossible to prove guilt at trial unless the accused has made a confession. Thus, according to the state's position, trial courts will be obligated to find, like the trial court in the present case, that the state failed to meet its burden of proof regarding mens rea whenever there is no direct evidence of what occurred in the defendant's mind.
We disagree with this characterization of the burden of proof. As in any case in which the state must prove the defendant's mental culpability, objective manifestations of the defendant's mental state may suffice to prove guilt beyond a reasonable doubt. Thus, in regard to the National Firearms Act, at issue in Staples, several of the federal circuit courts of appeal have recognized a permissible inference that the a defendant knew that his gun was a machinegun where a visual inspection would reveal that it had been converted into an automatic weapon. SeeUnited States v. O'Mara (C.A.9, 1992), 963 F.2d 1288, 1291;United States v. Anderson (C.A.5, 1989), 885 F.2d 1248,1251; see also Staples, 511 U.S. at 621, fn. 2 (Ginsburg, J., concurring). We think that a similar inference would be permissible in cases involving dangerous ordnance under Ohio law.
Under R.C. 2901.22(B), the state can prove knowledge of circumstances by showing that the accused was "aware that such circumstances probably exist[ed]." Where the accused has held a sawed-off shotgun in his hands, as Jordan did, there exists a high probability that he was made aware of the short length of the barrel. Therefore, even if an accused did not know for certain that his gun's barrel was too short — perhaps because it was only slightly so — he will almost certainly have been aware of the probability that it was shorter than eighteen inches. This is particularly so when the accused has more than passing familiarity with the weapon, for example if the accused owned the shotgun. In most such cases, the jury should be permitted to make an inference of knowledge from the act of possession. Visual inspection of shotgun itself may also be sufficient for the jury to determine whether the accused could possibly have been unaware that his shotgun barrel was too short.
On this basis, we distinguish the present appeal from the Twelfth District Court's decision in State v. Bryant (Aug. 6, 1990), Fayette App. No. CA89-09-019, unreported. We have already announced our disagreement with the reasoning adopted by the majority in that opinion. We do not find ourselves in disagreement with the court's judgment in that case, however, because of the different procedural posture in which that case reached the appellate court. In Bryant, the defendant actually shot someone with a sawed-off shotgun in a gun fight. Id. at 2. The jury convicted Bryant on one count of felonious assault and one count of unlawful possession of dangerous ordnance. Id. On appeal, he claimed that there was insufficient evidence to support his conviction for unlawful possession because the state did not prove that he knew his gun was less than eighteen inches long. Id. at 1, 3.
The Twelfth District affirmed the conviction because it held that the state only had to prove knowledge of possession. Id. Although we disagree with that rationale, we would also have affirmed the jury's verdict in that case. The evidence showed that Bryant owned the shotgun, he held it, he used it, and its barrel was more than an inch shorter than eighteen inches. Id. at 2, 3. In addition, he referred to the weapon as a sawed-off shotgun in his statement to police. Id. at 3. That evidence would have been sufficient to support an inference that Bryant knew that his gun's barrel was less than the eighteen inches mandated by R.C. 2923.11(F). Because such an inference is permissible, the evidence was then sufficient to support Bryant's conviction. We see no actual conflict, therefore, between the Bryant court's judgment and the one that we render today.
The trial court in the instant case did not make the permissible inference of knowledge from Jordan's possession of the gun. Its factual finding recognized a failure of proof as to an essential element of the crime. Thus, here, unlike in the Bryant
case, the judgment of conviction must be reversed.
 III
In light of the foregoing, we sustain appellant's sole assignment of error. We reverse the judgment of conviction and order that the defendant be discharged.
Judgment reversed.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Cheryl A. Ross
Anthony R. Cicero
Hon. Dennis Langer