OPINION
Appellant, Michael O. Beamon, is appealing his conviction for trafficking in cocaine in violation of R.C. 2925.03.
On May 23, 1999, former Special Agent 56 ("Agent 56") and her partner, Patrolman Curtis ("Curtis"), drove to the area of Homeworth Avenue in Painesville to make a controlled buy of crack cocaine. Agent 56 had in her possession a twenty-dollar bill and three ten-dollar bills that had been photocopied so that the bills could later be identified as having been used in the controlled buy. When Agent 56 and Curtis arrived at Homeworth Avenue, they were approached by two men, one of them was appellant, the other was Jonathon King ("King"). Agent 56 asked the two men if they were holding, and they indicated that they were, meaning that they had crack cocaine in their possession. Agent 56 then produced the $50 that had previously been photocopied. Appellant reached into the car in an effort to grab it out of her hand. Agent 56 pulled the money away from appellant and insisted on receiving the crack before turning over the money. King then exchanged the crack for the $50. Agent 56 and Curtis left the area and broadcasted a description of appellant and King over their police radio.
Officer John Kacvinsky ("Kacvinsky") was on road patrol at the time. He heard the descriptions of appellant and King over his radio. Appellant was described as a black male in a red shirt, who was running. Immediately after hearing this description, Kacvinsky saw an individual fitting that description run across the street directly in front of him. Kacvinsky pursued and captured appellant. At the time of his arrest, no controlled substances were found on appellant. However, an inventory search of his possessions conducted at the police station led to the recovery of the twenty-dollar bill that Agent 56 had photocopied prior to the controlled buy.
On August 2, 1999, appellant was indicted on one count of trafficking in a counterfeit controlled substance, a violation of R.C. 2925.37, and one count of trafficking in cocaine, a violation of R.C. 2925.03. On September 20, 1999, appellant filed a motion to suppress evidence. A suppression hearing was held on October 20, 1999, and the trial court denied appellant's motion on October 22, 1999.
A jury trial was held on December 6, 1999. Appellant was found not guilty of trafficking in a counterfeit controlled substance and guilty of trafficking in cocaine. Appellant filed motions for a new trial and to set aside the verdict on December 20, 1999. The trial court overruled both motions on January 21, 2000. Appellant was sentenced to three years of community control sanctions on February 2, 2000.
Appellant has filed a timely appeal and makes the following assignments of error:
 "[1.] The [t]rial [c]ourt erred to the prejudice of [appellant] when it denied [his] [m]otion to [s]uppress.
 "[2.] The [t]rial [c]ourt erred to the prejudice of [appellant] when it prohibited [him] from cross-examining the [s]tate's witness with regard to a plea agreement between the [s]tate and that witness.
 "[3.] The [t]rial [c]ourt erred to the prejudice of [appellant] when it admitted into evidence [s]tate's Exhibit 2, photographs of currency alleged to have been used in the alleged illegal drug transaction.
 "[4.] The verdict finding [appellant] guilty of drug trafficking is against the manifest weight of the evidence."
 Appellant raises two issues in his first assignment of error: (1) the police lacked reasonable suspicion to stop him; and (2) the police lacked probable cause to arrest him. With respect to the first issue, in justifying the search or seizure of an individual, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21. In assessing whether the intrusion was warranted, "* * * it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Id. at 21-22. "An inarticulate hunch or suspicion is not enough. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that appellant was violating or about to violate the law." Mentor v. Webb (June 30, 1993), Lake App. No. 92-L-158, unreported, 1993 WL 262561, at 2.
In the instant case, Kacvinsky heard a description of appellant over his radio and then saw appellant run in front of him within an extremely short time after the radio transmission. Further, Kacvinsky was patrolling in the same neighborhood where the drug transaction occurred. When Kacvinsky entered into pursuit of appellant, he was acting on information provided by a fellow law enforcement officer. Applying an objective standard to the review of these facts, it is clear that Kacvinsky had a reasonable belief that appellant had violated the law; therefore, his seizure of appellant was justified.
Appellant next argues that Kacvinsky lacked probable cause to arrest him. The state suggests that one of the grounds for appellant's arrest was a warrant issued by Oakwood Village. However, Kacvinsky was unaware of the warrant until after he had already apprehended appellant.
The Oakwood Village warrant was not the only source of probable cause to arrest appellant. Pursuant to R.C. 2935.04, when "* * * there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained." Kacvinsky arrived at the conclusion that appellant had committed a felony based on a description he heard over his police radio.
With respect to the adequacy of radio communications in providing probable cause, the Supreme Court of Ohio noted in State v. Fultz (1968),13 Ohio St.2d 79, 81, that:
 "A police officer necessarily relies on the information he receives over the police radio, and upon the receipt of such information it is the duty of the officer to act and act quickly. And, where the information is such as to give the officer reasonable grounds to believe a felony has been committed, then he has probable cause to arrest."
 Here, Kacvinsky acted upon information received over his police radio from a fellow police officer who had just witnessed the commission of a felony. In view of the holding in Fultz, we conclude that Kacvinsky had probable cause to arrest appellant without a warrant. For the foregoing reasons, appellant's first assignment of error lacks merit.[1]
In his second assignment of error, appellant contends that he should have been permitted to question his co-defendant, King, about the plea agreement entered into between the state and King in connection with an unrelated murder trial.[2] Appellant argues that, at his trial, the state attacked King's truthfulness; therefore, he should have been permitted to cross-examine King on the subject of the plea agreement because it served as evidence that King's reputation for truthfulness was relied upon by the state in other matters.
Evid.R. 608(A) provides that "* * * evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." Here, the state never attacked King's reputation for truthfulness. The portion of the transcript to which appellant refers in his brief contains the following exchange between the prosecutor and King on cross-examination:
 "Q. Now you were on Homeworth on May 23rd to sell drugs, right?
"A. Yes.
"Q. And you know Mike Beamon?
"A. Yes.
"Q. You've known him for what, three years you said?
"A. Yes.
 "Q. Okay. And he's a friend of yours, a close friend?
"A. Yes.
"Q. You hung out with Mike Beamon before?
"A. Yes.
"Q. You stated you owed him money?
"A. Yes.
"Q. That was some sort of bet?
"A. Yes.
 "Q. All right, so you're on Homeworth, you see this white car pull up?
"A. Yes."
 Evid.R. 611(B) permits for cross-examination "* * * on all relevant matters and matters affecting credibility." Here, the state legitimately raised the issue of King's friendship with appellant, thereby, indirectly raising the issue of his bias. While this line of questioning was directed at King's credibility, it was not an attempt to impinge upon his general character or reputation for truthfulness. Therefore, King's general character for truthfulness was never attacked, and it would have been inappropriate for the trial court to permit appellant's attorney to question King on the subject of his plea agreement in order to bolster King's testimony. See State v. Smelcer (1993), 89 Ohio App.3d 115, 121.
Pursuant to Evid.R. 801(D)(1)(b), a prior consistent statement is admissible to rebut a charge of recent fabrication or improper influence. However, no such charge was made in this case. Nor is it clear that the plea agreement would have constituted a prior consistent statement in this context even if a charge of recent fabrication or improper influence had been made. Therefore, Evid.R. 801(D)(1)(b) is not applicable in the instant matter. For the foregoing reasons, appellant's second assignment of error lacks merit.
In his third assignment of error, appellant raises three issues: (1) state's Exhibit 2 was not properly authenticated; (2) state's Exhibit 3 was not properly authenticated; and (3) state's Exhibit 3 was the product of an illegal search of appellant and, therefore, should not have been admitted into evidence.
Evid.R. 901(A) requires only that a proponent of a document produce "* * * evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) provides that an exhibit could be authenticated by testimony of a witness with knowledge "* * * that a matter is what it is claimed to be." In State v. Easter (1991),75 Ohio App.3d 22, 25, the Fourth Appellate District noted that "[t]his low threshold standard does not required conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be." (Emphasis sic.)
In the instant case, Agent 56 testified that prior to the controlled buy on May 23, 1999, a photocopy was made of the twenty-dollar bill and the three ten-dollar bills that were to be used in the buy. At trial, Agent 56 identified state's Exhibit 2 as that photocopy of the bills that were used in the controlled buy. She also identified state's Exhibit 3 as a photocopy of the twenty-dollar bill found on appellant after his arrest, which was identical to the twenty-dollar bill used for the controlled buy. Because Special Agent 56 was present at the controlled buy and had had possession of the money used for the buy, we conclude that her testimony was sufficient foundational evidence for the trial court to conclude that state's Exhibits 2 and 3 could be admitted into evidence.
The third issue raised by appellant, with respect to his third assignment of error, is that the state's Exhibit 3, a photocopy of a twenty-dollar bill found on appellant, should have been excluded by the trial court because the twenty-dollar bill was discovered as the result of an illegal search. The twenty-dollar bill was recovered by police during the course of an inventory of his possessions subsequent to his arrest. As we noted earlier, Kacvinsky had reasonable suspicion to stop appellant and probable cause to arrest him. An inventory search incident to a lawful arrest conducted when the accused has arrived at the place of detention is entirely lawful. State v. Tolbert (1989),64 Ohio App.3d 270, 272, citing United States v. Edwards (1974),451 U.S. 800; see, also, State v. Bush (1989), 65 Ohio App.3d 560, 563
citing Illinois v. Lafayette (1983), 462 U.S. 640, 646. Appellant has not suggested that the inventory search was not properly conducted. Because appellant was arrested with probable cause, and the twenty-dollar bill was recovered pursuant to a legitimate inventory search, appellant's argument that state's Exhibit 3 should have been excluded from evidence is not well-taken. For the foregoing reasons, appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant contends that the trial court's verdict was against the manifest weight of the evidence. Appellant was found guilty of trafficking in cocaine, in violation of R.C. 2925.03, which provides that: "[n]o person shall knowingly sell or offer to sell a controlled substance." A transfer of a controlled substance does not have to occur for a defendant to be convicted of offering to sell a controlled substance. State v. Patterson (1982),69 Ohio St.2d 445, 446, citing State v. Scott (1982), 69 Ohio St.2d 439.
In State v. Henton (1997), 121 Ohio App.3d 501, the appellant had been convicted of violating R.C. 2925.03(A)(1). In lieu of crack cocaine, the appellant had sold three peanuts to an Ashtabula County Narcotics Task Force informant for $50. This court upheld the appellant's conviction, noting that his "conduct, greeting automobiles that pulled up to the curb of an `open-air drug market' together with statements that he could provide [the informant] with cocaine, conveyed [his] willingness to enter into a drug transaction." Id. at 510.
In the instant case, Agent 56 testified to the following: appellant approached her vehicle in a neighborhood known for drug trafficking; appellant indicated that he was "holding"; appellant reached into Agent 56's vehicle in an attempt to snatch $50 out of her hand; and, a twenty-dollar bill that was used in part to make a drug purchase from King was later found in appellant's possession. In view of the foregoing, we hold that appellant's conviction was not against the manifest weight of the evidence. Consequently, appellant's fourth assignment of error lacks merit.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
JUDGE DONALD R. FORD, O'NEILL, P.J., GRENDELL, J., concur.
[1] Appellant cites State v. Smartt (1989), 61 Ohio App.3d 137, 138, for the proposition that "[w]here an investigative stop is made in response to a police radio broadcast, the burden is upon the state to show the factual basis for the stop * * *." The use of hearsay evidence to provide probable cause for a warrantless arrest raises two issues: (1) the basis of the declarant's knowledge and (2) the veracity of the declarant. Lewis R. Katz Paul C. Giannelli, Criminal Law (1996) 94, Section 5.13. Information based on the firsthand observation of a police officer is more reliable than information that an officer learned from another person. Id. With respect to credibility, a police officer's statements are entitled to be taken at face value and are assumed to be truthful. Id. A report by an identified victim or disinterested, identified witness may also be taken at face value. Id. The credibility of an anonymous informant, however, cannot be assumed. Id. at 95. InSmartt, the court questioned the reliability of the source of the information, which does not appear to have been a law enforcement official. Smartt, 61 Ohio App.3d at 138. The instant case is distinguishable from Smartt because the source of the information provided on the radio broadcast was a police officer who had firsthand knowledge that a felony had been committed.
[2] Appellant's brief implies that King appeared at his trial as a witness for the state. The record, however, clearly demonstrates that appellant called King as a witness.