JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, Mark Woodruff ("Woodruff), appeals his conviction for drug trafficking. Finding no merit to the appeal, we affirm.
 {¶ 2} In February 2006, Woodruff was charged with one count of drug trafficking. A schoolyard specification was attached, alleging that the offense was committed within one thousand feet of school premises. The matter proceeded to a jury trial, at which Woodruff was found guilty, and the court sentenced him to fourteen months in prison. The following evidence was presented at trial.
 {¶ 3} On February 7, 2006, Detective Pitts ("Pitts") of the Cleveland police worked as an undercover officer in the area of West 114th Street and Detroit Avenue in Cleveland. Pitts testified that the department had made hundreds of arrests in that area involving drug activity. As he patrolled the area that night in an unmarked vehicle, he observed Woodruff loitering on the corner of West 114th Street and Detroit Avenue. The second time he drove past, Pitts saw Woodruff again. Woodruff made eye contact with Pitts and nodded his head.[1] The third time Pitts drove by the corner, Woodruff nodded again, so the detective pulled into a parking lot on West 114th Street, approximately fifty feet from Hope Academy, an elementary school. Before the detective exited the car, Woodruff ran up to him and asked what he needed. Pitts replied that he was looking for "a 20 piece," which is the "street *Page 3 
term" for a rock of crack cocaine. Woodruff responded that he needed the money first. Pitts refused to tender the money because he did not want Woodruff to steal his marked buy money. He accused Woodruff of trying to rob him and run off with his money. Woodruff replied that it was alright, "* * * it's going to be a big block. It's going to be `cream.'"[2] Pitts told Woodruff to forget it and drove off. He called the police backup unit, which arrested Woodruff.
 {¶ 4} Woodruff appeals, raising one assignment of error, in which he argues that the jury verdict is against the manifest weight of the evidence. He contends that the State failed to prove beyond a reasonable doubt that he knowingly offered to sell drugs.[3] He maintains that Pitts believed he was going to rob him, not offer to sell him drugs. For the reasons that follow, we disagree.
 {¶ 5} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court stated:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than *Page 4 
the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 6} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212; State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Garrow (1995), 103 Ohio App.3d 368, 659 N.E.2d 814. *Page 5 
 {¶ 7} In order to be found guilty of drug trafficking under R.C.2925.03(A)(1), the State must prove that the defendant knowingly sold or offered to sell a controlled substance.
 {¶ 8} In State v. Scott (1982), 69 Ohio St.2d 439, 432 N.E.2d 798, the Ohio Supreme Court noted that "offer" means to "`to declare one's readiness or willingness'" to sell a controlled substance. In "offering to sell," the proscribed conduct is the offer to sell, not the offering of a controlled substance. Id. An offer is the marketing stage of the entire criminal enterprise of commerce in controlled substances. Id. Therefore, the crime of offering to sell a controlled substance is committed when the offer is made, not when the transaction is consummated. State v. Mosley (1977), 55 Ohio App.2d 178, 380 N.E.2d 731.
 {¶ 9} Moreover, in State v. Patterson (1982), 69 Ohio St.2d 445,432 N.E.2d 802, the Court held that:
 "Triers of fact should consider the totality of circumstances and decide whether, in a particular scenario, there is sufficient evidence to prove beyond a reasonable doubt that the accused has knowingly offered to sell a controlled substance. For example, the dialogue and course of conduct of the accused, as well as the nature of the goods transferred, may be relevant to this determination. Individually, no aspect of any of these examples is the ultimate fact. Collectively, they may or may not prove that the accused knowingly offered to sell a controlled substance."
 {¶ 10} Upon review of the evidence presented at trial, we find that the jury did not lose its way when it found Woodruff guilty of drug trafficking. Although Pitts did *Page 6 
not buy the crack cocaine from Woodruff, the record demonstrates that Woodruff offered to sell a controlled substance to Pitts.
 {¶ 11} Pitts testified that Woodruff offered to sell him "a 20 piece" or .2 grams of crack cocaine for $ 20. Pitts testified that Woodruff pleaded with him to buy the drugs. Woodruff told Pitts that the crack cocaine is going to be "cream," and "it's going to be a big block." Pitts testified that Woodruff offered to sell the crack cocaine to him several times.
 {¶ 12} Moreover, Pitts testified that he had made several drug related arrests in the area of West 114th Street and Detroit Avenue. Cleveland police patrol the area because of numerous citizen complaints regarding drug activity in the area. Furthermore, Pitts testified that during the forty-five minutes he patrolled the area, he saw Woodruff standing on the corner each time he drove by. They made eye contact and Woodruff nodded at him, which in Pitts' experience as a vice officer for nine years, is a signal indicating the sale of drugs. Therefore, the totality of the circumstances demonstrates that Woodruff engaged in drug trafficking. Thus, we find that his conviction was not against the manifest weight of the evidence.
 {¶ 13} Accordingly, the sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 7 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. and CHRISTINE T. McMONAGLE, J. CONCUR
[1] Pitts testified that, in his experience, when an individual nods his head and makes eye contact, it is for the purpose of selling drugs.
[2] Pitts testified that "cream" is the "street term" for high quality crack cocaine.
[3] Woodruff does not challenge the schoolyard specification. *Page 1