[Cite as *Gianetti v. Teakwood, Ltd.*, 2016-Ohio-213.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Charles Gianetti, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-413 |
| v. | : | (C.P.C. No. 14CV-2939) |
| Teakwood, Ltd. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

# D E C I S I O N

### Rendered on January 21, 2016

*Charles D. Gianetti*, pro se.

*The Behal Law Group LLC* and *Jack D'Aurora*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Plaintiff-appellant, Charles Gianetti, pro se, appeals the March 19, 2015 judgment of the Franklin County Court of Common Pleas following a bench trial, in which the trial court granted the motion of defendants-appellees, Teakwood, Ltd., 256 Enterprises, Inc., Heritage Resources, Inc., David W. Houze, and Todd Fentress, for involuntary dismissal under Civ.R. 41(B)(2). For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} This matter concerns appellant's limited partnership interest in Discovery 76, a limited partnership which owned several properties in the Columbus area. As set forth in the Amended and Restated Agreement of Limited Partnership of Discovery 76 ("Partnership Agreement"), which was dated May 7, 1975, the investment objective of Discovery 76 was to own and manage approximately 200 residential-housing rental units.

Discovery 76 planned to manage the rental units subject to and in conformity with the applicable rules and regulations of the United States Department of Housing and Urban Development ("HUD"). Generally speaking, in return for their investment in the creation of federally subsidized housing, the investors in Discovery 76, including appellant, received federal income tax deductions and cash distributions from the partnership. Appellant testified that he received approximately $200,000 in income tax deductions during the first five to six years of Discovery 76's existence.

{¶ 3} Beginning in 1996, the record reflects that Discovery 76 sought solutions to prevent potential negative tax consequences for the limited partners resulting from their continued investment due to potential changes in HUD regulations and operations. On July 18, 1996, Discovery 76 general partner Medallion-Discovery, Inc., through its president, appellee Houze, sent a letter to limited partners advising that impending changes to the HUD program might have "drastic implications * * * for project investors." On March 15, 1999, Houze sent a letter to limited partners, including appellant, recommending that they transfer their ownership interest in Discovery 76 to a charitable organization for tax purposes. Houze stated that, "without some financial and project restructuring the project will likely fail, causing immediate gain recognition, or it may limp along with marginal operations while generating increasingly higher levels of taxable income." On October 8, 2000, Houze sent another letter to the limited partners, including appellant, stating that Discovery 76 was "currently exploring the possibility of a transaction which would preserve all or most of your tax basis well into the future, deferring your annual ordinary income recognition to a future capital gain."

{¶ 4} Included with both the 1999 and 2000 letters was a consent form that proposed significant changes to the partnership. The consent form provided in part as follows: "I hereby authorize and give my consent to the restructuring and/or refinancing of the mortgage indebtedness of the project and the modification, addition to, amendment, change and/or substitution of any of the other contracts of this partnership and the sale or assignment of my limited partnership interest or the assets of the partnership." Appellant never executed such consent form. In 2003, Discovery 76 transferred its interests in the rental properties in a transaction that resulted in the

limited partners, including appellant, receiving an ownership interest in Teakwood. As a result of this transaction, Discovery 76 was terminated.

{¶ 5} On March 17, 2014, appellant filed a complaint in the trial court.[1] In his complaint, appellant asserted eight claims against appellees: (1) action for discovery; (2) breach of contract; (3) accounting; (4) breach of fiduciary duty; (5) fraud; (6) disregard of business entity; (7) negligent misrepresentation; and (8) successor liability.

{¶ 6} On April 16, 2014, appellees filed a motion to dismiss appellant's complaint and a motion to strike. On June 2, 2014, appellant filed a memorandum contra appellees' motion to dismiss, voluntarily withdrawing his claims for discovery and negligent misrepresentation. On July 25, 2014, the trial court filed a journal entry granting in part appellees' motion to dismiss as to appellant's claim for fraud only, and denying appellees' motion to strike.

{¶ 7} On October 27, 2014, appellees filed a motion for partial summary judgment on appellant's claims for breach of fiduciary duty and disregard of business entity. On November 10, 2014, appellant filed a memorandum contra appellees' motion for partial summary judgment, voluntarily withdrawing his claim for breach of fiduciary duty but asserting that appellees failed to meet their burden of demonstrating the absence of genuine issues of material fact as to appellant's claim for disregard of business entity, i.e., piercing the corporate veil. On December 18, 2014, appellees filed a motion to extend the cutoff date for dispositive motions. On January 6, 2015, the trial court filed a journal entry granting partial summary judgment on appellant's claim for disregard of business entity, denying appellees' motion to extend the dispositive motion deadline, and setting a date for bench trial on appellant's remaining claims.

{¶ 8} On March 17, 2015, the trial court conducted a bench trial, granting appellees' motion for involuntary dismissal pursuant to Civ.R. 41(B)(2) at the conclusion of appellant's case. On March 19, 2015, the trial court filed a decision and final judgment following bench trial. On April 10, 2015, appellees filed a motion for attorney fees pursuant to R.C. 2323.51.[2]

---

[1] We note that appellant indicated that this action was originally filed in December 2011 and was voluntarily dismissed in March 2013. (Appellant's Memorandum Contra, June 2, 2014, 4.)

[2] We note that this motion for attorney fees remains pending before the trial court.

## II. Assignments of Error

{¶ 9}    Appellant appeals assigning the following ten errors for our review:

I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS-APPELLEES TEAKWOOD, LTD., ET AL.'S MOTION FOR INVOLUNTARY DISMISSAL BECAUSE PLAINTIFF-APPELLANT PRESENTED A PRIMA FACIE CASE OF BREACH OF CONTRACT BY DEFENDANTS-APPELLEES, WITH THE NECESSARY QUANTUM OF PROOF.

II. THE TRIAL COURT ERRED IN RULING THAT CONSENTS OF OTHER PARTNERS ARE NOT RELEVANT TO BREACH OF CONTRACT AS TO PLAINTIFF-APPELLANT.

III. THE TRIAL COURT ERRED IN RULING THAT ONLY PLAINTIFF-APPELLANT AND NOT ALL PARTNERS WOULD BE HARMED BY DEFENDANTS-APPELLEES' ACTIONS.

IV. THE TRIAL COURT ERRED IN NOT ALLOWING DEFENDANT-APPELLEE HOUZE TO ENUMERATE THE CONSENT FORMS IN HIS TESTIMONY RELATED TO DEFENDANTS-APPELLEES' EXHIBIT E.

V. THE TRIAL COURT ERRED IN HOLDING THAT SUFFICIENT CONSENT FORMS WERE OBTAINED TO SATISFY CONTRACTUAL REQUIREMENTS.

VI. THE TRIAL COUT ERRED IN FINDING THAT DEFENDANTS-APPELLEES' REFERENCE IN THE CONSENT AND AUTHORIZATION TO SECTION 21b OF THE AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP OF DISCOVERY 76 WAS HARMLESS ERROR.

VII. THE TRIAL COURT ERRED IN NOT ALLOWING AMENDMENT OF THE COMPLAINT.

VIII. THE TRIAL COURT ERRED IN DISMISSING WITH PREJUDICE ALL CLAIMS AS TO DEFENDANTS-APPELLEES HOUZE AND FENTRESS.

IX. THE TRIAL COURT ERRED IN NOT ORDERING AN ACCOUNTING OF ALL TRANSACTIONS IN 2003.

> X. THE TRIAL COURT ERRED IN NOT FINDING THAT DEFENDANTS-APPELLEES HAD VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING.

Because several of appellant's assignments of error are interrelated, we address them together as applicable.

## A. First Assignment of Error

{¶ 10} In his first assignment of error, appellant asserts that the trial court erred by dismissing, pursuant to Civ.R. 41(B)(2), his breach of contract claim.

{¶ 11} Civ.R. 41(B)(2) governs dismissal in a bench trial and provides as follows:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Civ.R. 52 if requested to do so by any party.

"Civ.R. 41(B)(2) allows a trial court to determine the facts by weighing the evidence and resolving any conflicts therein." *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 104, citing *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 13. "If, after evaluating the evidence, a trial court finds that the plaintiff has failed to meet her burden of proof, then the trial court may enter judgment in the defendant's favor." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 9 (10th Dist.), citing *Daugherty v. Dune*, 10th Dist. No. 98AP-1580 (Dec. 30, 1999). "Therefore, even if the plaintiff has presented evidence on each element of her claims, a trial court may still order a dismissal if it finds that the plaintiff's evidence is not persuasive or credible enough to satisfy her burden of proof." *Jarupan* at ¶ 9, citing *Tillman v. Watson*, 2d Dist. No. 06-CA-10, 2007-Ohio-2429, ¶ 11. "An appellate court will not overturn a Civ.R. 41(B)(2) involuntary dismissal unless it is contrary to law or against the manifest weight of the evidence." *Stanley* at ¶ 104, citing *Whitestone Co.* at ¶ 13.

{¶ 12} "To recover upon a breach of contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage

or loss to the plaintiff." (Citations omitted.) *Jarupan* at ¶ 18. "In order to prove a breach by the defendant, a plaintiff must show that the defendant 'did not perform one or more of the terms of a contract.' " *Jarupan* at ¶ 18, quoting *Little Eagle Props. v. Ryan*, 10th Dist. No. 03AP-923, 2004-Ohio-3830, ¶ 15.

{¶ 13} In his complaint, appellant asserted that appellees' "actions in failing to distribute cash available from a real estate transaction, and instead distributing ownership interests in a functionally worthless business entity (Teakwood, Ltd.) constitute a breach of contract." (Complaint, ¶ 25.) Further, appellant claimed that "proper application of the terms of the limited partnership operating agreement in this instance, viewed in light of the fiduciary duty the general partners owed the limited partners and the duty of good faith and fair dealing imposed in every Ohio contract, required a valid pursuit of an arms-length sale of the real estate owned by Discovery 76." (Complaint, ¶ 25.) The trial court found that appellant "proved no obligation owed him under his Limited Partnership Agreement was breached in 2003." (Mar. 19, 2015 Decision ¶ 26.)

{¶ 14} At trial, appellant was asked regarding whether the Discovery 76 partnership agreement required a sale of properties for cash or that the interest in a successor entity such as Teakwood had to have a cash value:

> Q: This is the document that determines the relationship between the investors and the general partner; am I correct?
>
> A: Among other things. Did you want me to look at some specific items on that?
>
> Q: No, I just want you to look at that document. Is that the governing document for the partnership?
>
> A: Yes.
>
> Q: Would you please find for the court the paragraph that says that the partnership was obligated to sell the properties on a cash basis?
>
> A: There isn't any such paragraph.
>
> Q: Would you find for us the paragraph that says that if the partnership gave you an interest in another entity such as

> Teakwood, that interest had to have a cash value on the open market? Would you find that paragraph?
>
> A: I don't believe -- I don't believe a provision like that exists in the agreement, either.

(Tr. 29.)

{¶ 15} Thus, appellant's own testimony reflects that the partnership agreement did not contain the terms he alleged that appellees breached. Appellant does not contend otherwise upon appeal. Therefore, based upon appellant's own testimony, our review of the partnership agreement, and the lack of any additional evidence to support his claim, we find that appellant failed to demonstrate that appellees did not perform one or more of the terms of the contract. *Jarupan* at ¶ 18.

{¶ 16} Although the conclusion that appellant failed to establish a breach of a term of the contract by appellees would ordinarily end the analysis, the trial court also considered whether appellant established damages. We address this now as it is relevant to our resolution of the seventh assignment of error. The trial court found that "[j]ust as [appellant's] proof failed to show a threshold case of liability on any theory against Discovery 76, Teakwood or any other defendant, so too he failed to show any credible evidence of damages proximately caused by the events of 2003." (Mar. 19, 2015 Decision, ¶ 28.) At trial, appellant presented the testimony of Ben L. Corcoran, a real estate appraiser whom appellant retained in 2013 to appraise three properties formerly owned by Discovery 76. Corcoran stated that he appraised the properties "retrospectively as of April 1, 2003" by examining historical market rents and market sale data for the area and then comparing such values to the value listed by the Franklin County Auditor. (Tr. 34.) However, Corcoran also testified that, in order to determine the value of the properties in 2003, he was forced to make "extraordinary assumptions based on what would be typical in the marketplace." (Tr. 41.) Further, Corcoran did not observe any interiors of the properties or consider any regulatory restrictions that applied to them.

{¶ 17} Based upon the three "retrospective" appraisals conducted by Corcoran, appellant attempted to demonstrate the total value of the properties owned by Discovery 76 in 2003 by adding approximately 42 percent to the value of the properties as listed by

the Franklin County Auditor. The trial court summarized appellant's methodology for determining the values of the Discovery 76 properties as follows:

> Having no appraisals of the dozens of other properties owned by Discovery 76, [appellant] sought instead to value the balance by interpolating figures from those three actual appraisals and from property tax values on the Auditor's website. ([Appellant] acknowledged that a few of the Discovery 76 properties had been destroyed since 2003, but nevertheless tried to value them as well.) As to most properties, [appellant] asked the court to accept that an approximately 42% (on average) difference existed between fair market value in 2003 and the Auditor's tax values shown for 2003. He based this on the three actual appraisals (backdated to 2003) for which value was then compared to publicly available Auditor's tax values for those same three properties. Since the average difference found was that fair market value was 42% higher than tax value, he used that percentage to gross-up the tax values for all Discovery 76 properties. This simplistic approach (that Auditor's tax valuations for all properties were 42% too low in 2003) then became the basis for contending that Discovery 76 acted improperly in the Teakwood reorganization in 2003, and to contend that it caused him financial damages allegedly because the partnership's collection of properties in 2003 was worth more than Discovery 76 thought it was.

(Decision ¶ 22.) When asked regarding appellant's method of calculating the values of all properties owned by Discovery 76, Corcoran stated that it was not reasonable based on the limited survey he completed.

{¶ 18} The trial court found that the "three 2013 appraisals with values back-dated to 2003, based upon 'extraordinary assumptions' and the other uncertainties noted, may not be relied upon." (Decision ¶ 21.) Further, the trial court found that appellant's methodology was "speculative and not credible," and, as a result, that appellant failed to meet his burden of proof to establish damages. Upon review, as the trial court acted within its discretion by finding appellant's evidence with regard to damages was not credible, we cannot find that the trial court erred in determining that appellant failed to meet his burden of proof to establish damages from the alleged breach of contract.

{¶ 19} Having conducted a thorough review of the transcript and the evidentiary materials in the record, we cannot agree that the trial court erred in finding that appellant

failed to meet his burden of proof on the elements for his breach of contract claim, including both breach by appellees and resultant damages. Therefore, appellant's claim for breach of contract was properly dismissed under Civ.R. 41(B)(2). *Jarupan* ¶ 9. Accordingly, we overrule appellant's first assignment of error.

### B. Seventh Assignment of Error

{¶ 20} In his seventh assignment of error, appellant asserts that the trial court erred by failing to permit him to amend his action for breach of contract at trial to include a claim relating to the number of consents obtained by appellees.

{¶ 21} "We review the trial court's denial of leave to amend a complaint for abuse of discretion." *Morgan v. Ohio State Univ. College of Dentistry*, 10th Dist. No. 13AP-287, 2014-Ohio-1846, ¶ 50, citing *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120 (1991).

{¶ 22} Appellant correctly cites Civ.R. 15(A) for the proposition that leave of court to amend a complaint shall be freely given when justice requires. However, we do not find that justice required the amendment of appellant's complaint. In his complaint, appellant stated that he had been "damaged because he did not possess any type of 'veto power' under the limited partnership agreement to cancel the transaction at issue and Defendant Houze was able to persuade a majority of investors holding partnership interests to agree to the transaction at issue." (Complaint ¶ 36.) Thus, appellant never asserted that his claim included an allegation regarding the validity of consents obtained by appellees but, rather, complained that he was damaged because he did not possess a "veto power" over the transaction at issue.

{¶ 23} Appellant had a full and fair opportunity to introduce evidence to support his claim that appellees breached the partnership agreement by failing to sell the properties and distribute cash proceeds from such sales to the limited partners. Further, even if appellant was able to amend his complaint at trial to include a claim for breach based on the consent forms, appellant failed to meet his burden of proof on damages resulting from any breach. Thus, as appellant failed to establish damages, appellant cannot show prejudice by the decision of the trial court to refuse amendment to the complaint. *Daugherty*, 10th Dist. No. 98AP-1580. *See generally Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 38 ("A

reviewing court will not disturb a judgment unless the error contained within is materially prejudicial to the complaining party. When avoidance of the error would not have changed the outcome of the proceedings, then the error does not materially prejudice the complaining party."). Therefore, we cannot conclude that the trial court abused its discretion by refusing to allow appellant to amend his complaint at trial. *See Morgan* at ¶ 51.

{¶ 24} Accordingly, we overrule appellant's seventh assignment of error.

### C. Second, Third, Fourth, Fifth, and Sixth Assignments of Error

{¶ 25} In his second, third, fourth, fifth, and sixth assignments of error, appellant argues that the trial court committed error in several respects related to the consent forms obtained by Discovery 76. In his second assignment of error, appellant asserts that the trial court erred by ruling that the consents of other partners were "not relevant to breach of contract as to plaintiff-appellant." In his third assignment of error, appellant asserts that the trial court erred by ruling that only appellant, and not all partners, would be harmed by appellees' actions. In his fourth assignment of error, appellant asserts that the trial court erred by refusing appellant's request to have Houze enumerate the consent forms contained in appellees' Exhibit E. In his fifth assignment of error, appellant asserts that the trial court erred in finding that sufficient consent forms were obtained to satisfy contractual requirements. In his sixth assignment of error, appellant asserts that the trial court erred in finding that the reference in the consent forms to Section 21(b) of the partnership agreement was harmless error.

{¶ 26} We note that appellant does not argue these assignments of error separately but, rather, argues them in the context of arguing that appellees breached the contract because they did not have sufficient or valid consent forms. Such claim was not included in the original complaint but, rather, was the subject of appellant's motion to amend the complaint at trial.

{¶ 27} As we have determined in our resolution of appellant's seventh assignment of error that the trial court did not err by refusing to allow appellant to amend his complaint at trial to include a claim related to the validity of consent forms obtained by Discovery 76, we find that appellant's second, third, fourth, fifth, and sixth assignments of error are moot.

### D. Eighth Assignment of Error

{¶ 28} In his eighth assignment of error, appellant asserts that the trial court erred in dismissing his claims against Houze and Fentress. In its March 19, 2015 decision, the trial court found that appellant "produced no evidence suggesting any possible legal liability for defendants David W. Houze and Todd Fentress. It appears their only involvement in any of the events discussed in this law suit was as employees of a corporate general partner of Discovery 76 or Teakwood. Accordingly, since they breached no legal obligation owed to plaintiff all claims against both men are dismissed with prejudice." (Decision ¶ 14.)

{¶ 29} Appellant offers no support, either legal or factual, for his assertion that the trial court erred by dismissing claims against Houze and Fentress. App.R. 12(A)(2) provides as follows: "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

{¶ 30} "It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error." *Bond v. Village of Canal Winchester*, 10th Dist. No. 07AP-556, 2008-Ohio-945, ¶ 16, citing *Whitehall v. Ruckman*, 10th Dist. No. 07AP-445, 2007-Ohio-6780, ¶ 20. " 'It is not the duty of [an appellate] court to search the record for evidence to support an appellant's argument as to alleged error.' " *Ruckman* at ¶ 20, quoting *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, ¶ 94 (10th Dist.). " ' "If an argument exists that can support [an] assignment of error, it is not [an appellate] court's duty to root it out." ' " *Ruckman* at ¶ 20, quoting *Petro* at ¶ 94, quoting *Cardone v. Cardone*, 9th Dist. No. 18349 (May 6, 1998). Further, we note the principle that "[p]ro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors." *Ruckman* at ¶ 21 (citations omitted).

{¶ 31} As appellant provides no support for his assertion that the trial court erred by dismissing claims against Houze and Fentress, we decline to consider appellant's assignment of error.

{¶ 32}  Accordingly, we overrule appellant's eighth assignment of error.

### E. Ninth Assignment of Error

{¶ 33}  In his ninth assignment of error, appellant asserts that the trial court erred by failing to order an accounting of all transactions in 2003. We find that the trial court did not err by granting an involuntary dismissal related to appellant's claim for an accounting. Having reviewed the transcript, we find that appellant never demonstrated that he was entitled to an accounting. Appellant points to no evidence in the record to the contrary.  *See Ruckman* at ¶ 20. Accordingly, the trial court did not err by dismissing such claim under Civ.R. 41(B)(2). *Stanley* at ¶ 104; *Jarupan* at ¶ 9.

{¶ 34}  Accordingly, we overrule appellant's ninth assignment of error.

### F. Tenth Assignment of Error

{¶ 35}  In his tenth assignment of error, appellant asserts that the trial court erred by failing to find that appellees violated a duty of good faith and fair dealing. "[A] claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing." *Krukrubo v. Fifth Third Bank*, 10th Dist. No. 07AP-270, 2007-Ohio-7007, ¶ 19.  On the facts of this case, because appellant failed to establish a breach of contract, he necessarily also failed to establish a breach of the duty of good faith and fair dealing.  *Id.*  ("Because appellant's complaint fails to state a claim for breach of contract, it also fails to state a claim for breach of the duty of good faith and fair dealing."); *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 98 (stating that "an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim").

{¶ 36}  Accordingly, we overrule appellant's tenth assignment of error.

## III. Disposition

{¶ 37}  Having  overruled  appellant's  first,  seventh,  eighth,  ninth,  and  tenth assignments of error and rendered moot appellant's second, third, fourth, fifth, and sixth assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

———————————