[Cite as *State v. Ward*, 2017-Ohio-8518.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 3-17-02

    v.

TYLER R. WARD,                           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Trial Court No. 16-CR-0326

Judgment Affirmed

Date of Decision:   November 13, 2017

APPEARANCES:

    *Adam Charles Stone* for Appellant

    *Robert J. Kidd* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, Tyler R. Ward ("Ward"), brings this appeal from the judgment of the Crawford County Common Pleas Court finding him guilty of four of his five counts of trafficking in drugs and sentencing him to an aggregate sentence of 54 months in prison. Ward was found not guilty on one of the counts. On appeal, Ward claims that: (1) the trial court committed plain error regarding its jury instruction pertaining to "knowledge;" (2) the trial court committed plain error in allowing counts II & IV to be presented to the jury; and (3) the trial court abused its discretion in sentencing Ward to consecutive maximum sentences on his convictions. For the reasons set forth below, the judgment of the Crawford County Common Pleas Court is affirmed.

*Facts & Procedural History*

{¶2} On July 7, 2016, the Crawford County Sheriff's Department ("Sheriff's Department") set up a drug "buy" through its use of a confidential informant ("CI"). The CI informed the Sheriff's Department that he could buy drugs from a person named Tiffany Quaintance ("Tiffany"). Tiffany told the CI that she would sell him drugs and that her boyfriend (Ward) would be present during the sale.[1] Tiffany informed the CI that she would sell him one gram of heroin and three Xanax tablets

---

[1] The Sheriff's Department checked Tiffany's Facebook page and found that Tiffany was in a relationship with Ward. The Sheriff's Department was also able to obtain a picture of Ward through Tiffany's Facebook page.

for $125. Tiffany and the CI agreed that the sale would occur at a park in Crawford County. However, prior to arriving at the park, the terms of the drug buy changed when the CI agreed to purchase one gram of heroin and just one Xanax tablet for $125.

{¶3} Equipped with an audio recorder provided by law enforcement, the CI met Tiffany and Ward at Cobey Park in Galion, Ohio. When the CI arrived at the park, he noticed that Tiffany was "strung out" and unable to interact, so Ward conducted and completed the drug sale with the CI. Prior to leaving the park the CI asked Ward if the heroin contained fentanyl, to which Ward replied that the heroin was pure. When he completed the drug buy the CI returned to the law enforcement officers (working with him) and turned over the drugs. The CI also identified Ward as the individual from whom he purchased drugs, based on the photo of Ward obtained from Tiffany's Facebook page.

{¶4} A second buy involving the CI and Ward took place on August 9, 2016.[2] This time the CI arranged to purchase one gram of heroin from Ward for $100. Ward agreed to meet the CI at East Park in Galion, Ohio to complete the buy. Just prior to the sale, the Sheriff's Department equipped the CI with a video recorder which recorded the entire drug transaction between the CI and Ward. After completing the buy, the CI returned to law enforcement officers (working with him)

---

[2] Tiffany was not involved in the second drug transaction.

and turned over the purchased heroin. During this transaction, Ward can be heard telling the CI how Tiffany sold his (Ward's) cousin heroin containing fentanyl that resulted in his (Ward's) cousin's death.

{¶5} The drugs purchased from Ward on July 7, 2016 and August 9, 2016 were sent to the Bureau of Criminal Investigations ("BCI") to be chemically analyzed. BCI reported that the pill Ward sold on July 7, 2016 contained Alprazolam, (the generic name for Xanax), a Schedule IV drug. BCI also reported that both heroin samples of the drug buys from the July 7th and August 9th transactions contained heroin *and* fentanyl. Heroin is a Schedule I substance, and fentanyl is a Schedule II substance.

{¶6} On November 7, 2016, the Crawford County Grand Jury indicted Ward on five counts of Trafficking in Drugs regarding the two drug transactions. Specifically, the Grand Jurors indicted Ward on: Count I – Trafficking in Heroin, in violation of R.C. 2925.03(A) & (C)(6)(a), a felony of the fifth degree; Count II – Trafficking in Fentanyl, in violation of R.C. 2925.03(A) & (C)(1)(a), a felony of the fourth degree; Count III – Trafficking in Alprazolam, in violation of R.C. 2925.03(A) & (C)(2)(a), a felony of the fifth degree; Count IV – Trafficking in Heroin, in violation of R.C. 2925.03(A) & (C)(6)(a), a felony of the fifth degree; and Count V – Trafficking in Fentanyl, in violation of R.C. 2925.03(A) & (C)(1)(a),

a felony of the fourth degree. Counts I, II, and III pertained to the July 7, 2016 drug buy and Counts IV and V were relative to the August 9, 2016 buy.

{¶7} On December 21, 2016 Ward filed a motion to suppress in the trial court, and a hearing occurred on the motion on January 30, 2017. The trial court denied the motion on January 31, 2017 and the matter proceeded to a jury trial on February 9th, 2017.

{¶8} At trial, the State filed a motion for a proposed curative jury instruction regarding "knowledge." The trial court granted the State's instruction over Ward's objection.

{¶9} On February 10, 2017, the jury found Ward guilty on Counts I (Trafficking in Heroin), III (Trafficking in Alprazolam), IV (Trafficking in Heroin), and V (Trafficking in Fentanyl) and not guilty of Count II (Trafficking in Fentanyl). The trial court proceeded to sentencing, and after hearing arguments regarding merger and consecutive sentencing, the trial court sentenced Ward to 12 months in prison on Count I; 12 months in prison on Count III; 12 months in prison on Count IV; and 18 months in prison on Count V. The trial court further ordered that all sentences run consecutively to each other for a total prison term of fifty-four (54) months. The trial court journalized its sentence on February 13, 2017, from which Ward appeals, presenting the following assignments of error for our review:

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING THE JURY INSTRUCTION AGAINST APPELLANT'S OBJECTION DEFINING "KNOWLEDGE" AND DIMINISHING WHAT THE STATE OF OHIO IS REQUIRED TO PROVE BEYOND A REASONABLE DOUBT.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING THE CHARGES OF COUNTS II AND V TO BE PRESENTED TO THE JURY WHEN THE CHARGES ARE BASED OUT OF THE SAME INTERACTION AND APPELLANT DEMONSTRATED NO KNOWLEDGE OF FENTANYL BEING PRESENT IN THE TRANSFER.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT COMMITTED ABUSE OF DISCRETION IN SENTENCING APPELLANT TO A MAXIMUM SENTENCE IN EACH OF THE FOUR CONVICTED COUNTS TO BE SERVED CONSECUTIVELY WITH NO EXPLANATION PROVIDED IN THE JUDGMENT ENTRY FOR SAID SENTENCE.**

**{¶10}** We discuss each assignment of error in turn.

*Assignment of Error I*

**{¶11}** In his first assignment of error, Ward contends that the trial court committed plain error when it overruled Ward's objection to the State's proposed jury instruction. Specifically, Ward contends that the trial court lowered the State's burden of proof with its jury instruction on "knowingly."[3] We disagree.

---

[3] We use "knowledge" and "knowingly" interchangeably throughout this assignment of error.

*Standard of Review*

**{¶12}** While Ward analyzes this assignment of error under a "plain error" standard of review, this Court has consistently determined that "[i]n reviewing the sufficiency of jury instructions given by a trial court, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *Schnipke v. Safe-Turf Installation Group, L.L.C.,* 190 Ohio App.3d 89, 2010-Ohio-4173, 940 N.E.2d 993, ¶ 30 (3rd Dist.) citing *State v. Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). "A strong presumption exists in favor of the propriety of jury instructions." *Id.* "Generally, the trial court should give requested jury instructions 'if they are correct statements of the law applicable to the facts in the case.'" *Id.* quoting *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). Furthermore, an "'abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious.'" *State v. Thompson,* 3rd Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 11 quoting *Heilman v. Heilman,* 3rd Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 14.

*Analysis*

**{¶13}** On two separate occasions, Ward sold to a CI a substance that he held out to be heroin. After the substances were submitted to BCI for analysis, it was

determined that each contained heroin *and* fentanyl, both of which are controlled substances. As a result, Ward was indicted on five counts of trafficking in drugs (two of which were relative to trafficking in heroin and two for trafficking in fentanyl on the stated dates), all in violation of R.C. 2925.03(A). R.C. 2925.03(A) states, in part: "[n]o person shall *knowingly* do any of the following: sell or offer to sell a controlled substance * * *." (Emphasis added). R.C. 2925.03(A).

**{¶14}** At the conclusion of the evidentiary portion of the trial and prior to the trial court delivering its instructions to the jurors, Ward objected to the State's proposed jury instruction regarding the element of "knowledge." (02/10/2017 Tr., Vol. II, at 291). Specifically, Ward argued that the trafficking statute required that he must have actual knowledge that he was selling heroin laced with fentanyl to be convicted of both charges. The State argued that the "knowingly" language only required that the State prove that Ward knowingly sold or offered to sell a controlled substance. After entertaining arguments from both sides, the trial court overruled Ward's objection, and instructed the jury on "knowingly" in accordance with the State's proposed instructions as follows:

> [A] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result and he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. *In order to prove that the defendant acted knowingly, the State of Ohio need not prove that the defendant had knowledge of the underlying nature of the controlled substance.* How to determine: Since you cannot look into the mind of another,

>knowledge is determined from all the facts and circumstances of the case.

(Emphasis added). (*Id.; id*. at 309-10).

**{¶15}** On appeal, Ward argues that the trial court erred by instructing the jury that the State need not prove that he had actual knowledge that the heroin he sold contained fentanyl. We find the trial court's instruction to the jury was not error. The Ohio Supreme Court has addressed Ward's "knowingly" argument, holding that the word "knowingly" is an adverb which modifies the verb "sell" or "offer." *State v. Patterson,* 69 Ohio St.2d 445, 447, 432 N.E.2d 802 (1982), *overruled in part on other grounds*. The Supreme Court determined that "[i]t is clear on the face of the statute that a culpable mental state must exist with respect to the act of offering [or selling]." *Id.* "One's understanding of the nature of the substance does not necessarily determine whether he or she knowingly offered to sell a controlled substance." *Id.* Specifically, the Ohio Supreme Court held that "[w]e will not read the additional element of knowledge of the nature of the substance into R.C. 2925.03(A)* * *." *Id.* While *Patterson* was overruled on other grounds, the Supreme Court's interpretation of "knowingly" has been followed by appellate courts throughout Ohio. *See, e.g., State v. Stover,* 11th Dist. Lake No. 2015-L-041, 2016-Ohio-1361, ¶ 14 (holding that the state was not required to prove beyond a reasonable doubt that the Appellant had knowledge he was selling heroin; rather the state was only required to prove beyond a reasonable doubt that Appellant

knowingly sold or offered to sell a controlled substance); *see also State v. Wyatt,* 4th Dist. Scioto No. 93CA2168, 1994 WL 484083, *4 (holding that the critical inquiry under the "knowingly" portion of the trafficking statute is whether Appellant "knowingly" made the offer, not whether he knew that the material was a controlled substance).

{¶16} However, Ward attempts to distinguish *Patterson* and its progeny, arguing that unlike the cases cited, he knew that he was selling heroin (a controlled substance), but did not know that the controlled substance contained another controlled substance (fentanyl). We answer this argument by referring to *Patterson,* noting the following guidance provided by the Supreme Court:

> Triers of fact should consider the totality of the circumstances and decide whether, in a particular scenario, there is sufficient evidence to prove beyond a reasonable doubt that the accused has knowingly offered to sell a controlled substance. For example, the dialogue and course of conduct of the accused, as well as the nature of the goods transferred, may be relevant to this determination.

*Patterson,* 69 Ohio St.2d 445, 447, 432 N.E.2d 802 (1982), *overruled in part on other grounds*.

{¶17} In analyzing the particulars of this case, we find that the jury convicted Ward of only one of the trafficking in fentanyl counts, the August 9, 2016 drug transaction, not the July 7, 2016 purchase. And regarding this sale, the evidence reveals that Ward told the CI that his girlfriend, Tiffany, had sold heroin containing fentanyl to his cousin which killed him (Ward's cousin). (02/09/2017 Tr., Vol. I,

at 175). This dialogue (between Ward and the CI) supports the jury's verdict, under the totality of the evidence presented, that Ward was aware that the drug he was selling *could* contain fentanyl.

{¶18} As such, we find that the trial court did not abuse its discretion with its "knowingly" jury instruction, and we overrule Ward's first assignment of error.

*Assignment of Error II*

{¶19} In his second assignment of error, Ward contends that the trial court committed plain error by allowing multiple charges to be made against Ward for the singular instance of trafficking in drugs. We disagree.

*Standard of Review*

{¶20} Plain error is generally applied "'with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *State v. Goldsberry,* 3rd Dist. Union No. 14-07-06, 2009-Ohio-6026, ¶ 17 citing *State v. Landrum,* 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990) quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right." *Id.* citing *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240 (2002). Furthermore, "[u]nder the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been

different but for the trial court's errors." *Id.* citing *State v. Waddell,* 75 Ohio St.3d 163, 166, 1996-Ohio-100, 661 N.E.2d 1043 (1996).

*Analysis*

**{¶21}** Ward's argument in support of his second assignment of error is rather convoluted, as it appears that Ward attempts to argue that the trial court erred when it failed to merge Counts IV and V (pertaining to the August 9, 2016 drug buy) because the charges involved the same compound mixture. However, rather than conducting a merger analysis, Ward attempts to distinguish the facts of his case from the facts in *State v. Chandler,* in which the Ohio Supreme Court held that "filler substances" could be used to establish a higher weight of the drug to enhance the trafficking convictions. *State v. Chandler,* 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, ¶ 19. Here, the record is void of any evidence supporting that fentanyl is a "filler substance."

**{¶22}** Moreover, Ward's argument is unresponsive to his stated assignment of error and pursuant to App.R. 12(A)(2), an appellate court "may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required by App.R. 16(A)." App.R. 12(A)(2). "'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.'" *Gianetti v. Teakwood, Ltd.,* 10th Dist. Franklin No. 15AP-413, 2016-Ohio-213, ¶ 30 quoting

*Bond v. Village of Canal Winchester,* 10th Dist. Franklin No. 07AP-556, 2008-Ohio-945, ¶ 16. "'If an argument exists that can support an assignment of error, it is not an appellate court's duty to root it out.'" *Id.,* quoting *State ex rel. Petro v. Gold,* 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 94 (10th Dist.). As Ward provides no support for his assertion that the trial court erred by allowing multiple charges to be made against Ward for the singular instance of trafficking in drugs, we decline to consider Ward's assignment of error.

{¶23} Accordingly, Ward's second assignment of error is overruled.

### *Assignment of Error III*

{¶24} In this third assignment of error, Ward argues that the trial court abused its discretion by sentencing Ward to the maximum sentence in each of the four charges that he was convicted of and running the sentences consecutively, for a total prison sentence of 54 months.[4] We disagree.

### *Standard of Review*

{¶25} R.C. 2953.08(G)(2), entitled "Appeals based on felony sentencing guidelines" provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence * * *. The appellate court may increase, reduce, or otherwise

---

[4] While Ward frames this argument under an "abuse of discretion" standard, he directs this Court to *State v. Marcum*, in which the Ohio Supreme Court held that appellate courts should utilize a clear and convincing standard of review for felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. According, as Ward's third assignment of error pertains to the imposition of sentences related to his convictions, we analyze this assignment of error under the standard set forth in *Marcum*.

> modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
>    (a)   That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division 2929.13(B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
>    (b)   That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2). "[A]ppellate courts must adhere to the plain language of R.C. 2953.08(G)(2). *Id.* An appellate court may only modify or vacate a sentence if it finds by clear and convincing evidence that the record does not support the sentencing court's decision. *Id.* Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Silknitter,* 3rd Dist. Union No. 14-16-07, 2017-Ohio-327, ¶ 7 quoting, *Marcum, supra,* quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Marcum,* at ¶ 22 quoting *Ledford.*

*Analysis*

**{¶26}** Ward contends that because of his "willingness to take responsibility for his actions, his period of improved behavior prior to these instances (referring to the drug trafficking activity involved in the instant appeal), and the overall severity of the sentence," the trial court's sentence was contrary to law. Further, Ward argues that the trial court was required to explain its reasoning (for imposing consecutive sentences) in its judgment entry. In its judgment entry of sentence filed February 13, 2017, the trial court specifically stated:

> Upon consideration of the statements of the parties, the purposes and principles of sentencing, the record and the statements/exhibits of counsel, the factors including: the Defendant's prior criminal history, these factors weigh in favor of the Defendant's conduct being more serious under Ohio Revised Code Sec. 2929.12(B). The Court also finds that the Offender's Recidivism is more likely factors pursuant under Ohio Revised Code. Sec. 2929.12(D) slightly outweighs the Offender's Recidivism is less likely factors pursuant to Ohio Revised Code Sec. 2929.12(E). Having considered all the factors required under Ohio Revised Code Sec. 2919.12 the Court is unable to make a finding that prison time would not be appropriate. Prison is necessary in order to punish the Defendant and protect the public and not to demean the seriousness of the offense.

(Doc. No. 26 at 2). The court then sentenced Ward to twelve (12) months in prison for Count I, twelve (12) months in prison for Count III, twelve (12) months in prison for Count IV, and eighteen (18) months in prison for Count V, for a total term of imprisonment of fifty-four (54) months. (*Id.*).

**{¶27}** As an initial matter, we note that other than asserting his sentence was contrary to law, and citing some anecdotal incidents of his improved behavior, Ward presents no legal support for his argument that the sentence of the trial court was contrary to law. As we explained above, it is Ward's duty to construct the legal arguments necessary to support his assignment of error. *See generally, Gianetti,* 10th Dist. Franklin No. 15AP-413, 2016-Ohio-213, ¶ 30. Additionally, even if we were to analyze the merits of this assignment we would find that Ward's prior criminal history, the nature of his criminal convictions, and the potential harm to the public caused by his actions support the imposition of maximum consecutive sentences by the trial court. *See* R.C. 2929.14(C)(4)(c).

**{¶28}** Nevertheless, in *State v. Bonnell,* the Ohio Supreme Court held that in order to impose consecutive terms of imprisonment, the trial court is required to make statutorily enumerated findings at the sentencing hearing and incorporate its findings into its sentencing entry, but a trial court "has no obligation to state reasons to support its findings." *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16. The record herein demonstrates that the trial court made the statutorily required findings regarding the imposition of consecutive sentences. And, upon our review of the record, we find that clear and convincing evidence exists therein supporting the trial court's imposition of maximum and consecutive sentences. Accordingly, Ward's third assignment of error is overruled.

**{¶29}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**