[Cite as *State v. Luce*, **2018-Ohio-4409**.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff – Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 17-COA-037 |
| CHRISTOPHER D. LUCE | |
| Defendant – Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:     Appeal from the Ashland County Court of
Common Pleas Case No. 17-CRI-025



JUDGMENT:     Affirmed in part, Vacated in part, and
Remanded

DATE OF JUDGMENT ENTRY:     October 31, 2018


APPEARANCES:


For Plaintiff-Appellee          For Defendant-Appellant

CHRISTOPHER R. TUNNELL          CHRISTINA I. REIHELD
Ashland County Prosecuting Attorney          P.O. Box 532
110 Cottage Street          Danville, OH  43014
Ashland, OH  44805

*Hoffman, J.*

**{¶1}** Defendant-appellant Christopher D. Luce appeals his convictions and sentence entered by the Ashland County Court of Common Pleas, following a jury trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On March 9, 2017, the Ashland County Grand Jury indicted Appellant on one count of involuntary manslaughter, in violation of R.C. 2903.04(A), a felony of the first degree; one count of corrupting another with drugs, in violation of R.C. 2925.02(A)(3), a felony of the second degree; two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1) and (2), felonies of the fifth degree; two counts of aggravated possession of drugs, in violation of R.C. 2925.11(A), felonies of the fifth degree; two counts of possessing drug abuse instruments, in violation of R.C. 2925.12(A), misdemeanors of the second degree; one count of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree; one count of illegal use or possession of marijuana drug paraphernalia, in violation of R.C. 2925.141(C), a minor misdemeanor; and one count of possession of drugs, in violation of R.C. 2925.11(A), a misdemeanor of the first degree.

**{¶3}** Appellant appeared before the trial court for arraignment on March 14, 2017, and entered a plea of not guilty to the Indictment. Prior to trial, Appellant filed a motion to sever the charges in the Indictment, which the trial court denied via judgment entry filed July 24, 2017.  Appellant also filed a motion in limine, seeking to exclude at trial evidence of any confessions made by his co-defendant, Danielle Luce, pursuant to *Bruton v. U.S.*, 391 U.S. 123 (1968).

{¶4} On August 1, 2017, Appellant appeared before the trial court, withdrew his former plea of not guilty on Counts 9 (aggravated possession of drugs), 10 (possessing drug abuse instruments), and 11 (possession of drugs), and entered a plea of guilty to those charges. Following a Crim. R. 11 colloquy with Appellant, the trial court determined Appellant was knowingly, intelligently and voluntarily entering the plea, accepted such, and found him guilty of Counts 9, 10, and 11. The trial court did not rule on the motion in limine prior to trial.

{¶5} The matter proceeded to trial on the remaining eight counts on August 1, 2017. Appellant and Danielle were tried together.

{¶6} Officers John Simmons and Brian Kunzen of the Ashland Police Department were dispatched to 1311 Cleveland Avenue, Lot #9, on August 8, 2016. Upon his arrival at the scene, Officer Kunzen encountered a woman by the name of Harlina Bell, who told them Appellant had overdosed on heroin. Thereafter, the officers approached the trailer and encountered a female, who was later identified as Appellant's wife, Danielle Luce. Officer Simmons testified Danielle "appeared that she had difficulty comprehending and seemed like she was under the influence of a substance and wasn't comprehending anything, and she was unsteady on her feet." Tr. Jury Trial, Day 1, Aug. 1, 2017, at 178. The officers proceeded to a back bedroom where they discovered Appellant, who was unresponsive. An emergency squad arrived a short time later and administered Narcan to Appellant. EMTs administered several doses of Narcan before Appellant became alert.

{¶7} While the EMTs worked on Appellant, Officer Simmons spoke with Danielle. Danielle admitted she had snorted heroin. She indicated she had purchased the heroin

at a BP gasoline station in Mansfield.  At the time of the purchase, the heroin was in a small plastic bag.  According to Officer Simmons, Danielle stated the drug had a different taste or effect.  Danielle also told Officer Kunzen the heroin did not smell or taste right. Danielle was transported to the Ashland County Police Department, and later taken to the Ashland County Jail.  Appellant was transported to the hospital.

{¶8}    During a search of the trailer, officers found numerous items related to drug use, including syringes, syringe caps, a crack pipe, tubes or "stems" for a crack pipe, two metal spoons, white powder scraped into a line in the center of a glass tray, a marijuana pipe, razor blades, a shoe lace, cotton balls, and a syringe filled with a brown liquid.

{¶9}    Diane Harpster, Jeffrey Sanders' mother, acknowledged her son had had trouble with the law and had an addiction problem. The last time Harpster saw Sanders was on August 7, 2016, but she had spoken with him between 5 and 6 p.m. the following day.  On August 9, 2016, Harpster texted Sanders to inform him her boyfriend's mother was in the hospital.  When she did not hear from Sanders, Harpster called his cell phones, left text messages on both phones, and messaged him through Facebook.  Sanders did not respond to any of her communications, which worried Harpster.  Harpster asked her daughter to check on Sanders because she could not leave work. Harpster's daughter went to Sanders' residence and found him dead.    The Cuyahoga County Medical Examiner's Office ruled Sander's death was the result of acute intoxication of Carfentanil.

{¶10} Harpster testified Sanders lived at 1423 Cleveland Avenue, Lot #11. Sanders did not have a driver's license and his only means of transportation was his bicycle.  The bicycle was outside Sanders' trailer on the day his body was discovered.

Harpster indicated Sanders had been clean for over 600 days and was proud of his sobriety. Harpster denied Sanders' use of intravenous drugs at any time.

{¶11} Krystal Campbell, Sanders' older sister, testified Harpster contacted her around lunchtime on August 9, 2016, and asked her to check on Sanders. Campbell agreed to check on her brother. Campbell and her boyfriend drove to Sanders' residence. Campbell knocked on the door of the trailer for several minutes. She tried the door and found it was unlocked. She poked her head into the trailer and called Sanders' name. She entered the trailer and began to search for Sanders, continuing to call her brother's name. Campbell eventually found Sanders in the bathroom, slumped over the bathtub. Sanders was unresponsive. Campbell's boyfriend called 9-1-1.

{¶12} Detective Brian Evans of the Ashland Police Department was dispatched to 1423 Cleveland Avenue, Lot #11, on August 9, 2016, in response to a possible overdose. At the scene, Detective Evans spoke with members of Sanders' family, photographed the scene, and collected evidence. Detective Evans returned to the station at approximately 6 p.m. and learned of the overdose at Appellant's residence the prior evening. Detective Evans read the report of the incident and learned Appellant lived one block away from Sanders. He then searched Danielle's phone, which had been taken into evidence, and found a number of text messages and phone calls between Danielle and Sanders, all dated August 8, 2016. Thereafter, Detective Evans proceeded to the jail and questioned Danielle.

{¶13} Detective Evans testified Danielle told him she obtained the drugs from a dealer named "Yellow" in Mansfield earlier in the day on August 8, 2016. Detective Evans added Danielle said she snorted some of the drugs, but was afraid to use the remainder

because the drugs seemed different. Detective Evans testified Danielle recalled Sanders came to the trailer and purchased the drugs which had been prepared for him when she returned from Mansfield. Detective Evans stated Danielle told him Sanders gave her a $20 bill, took the baggie of drugs, and left. Detective Evans added Danielle informed him she subsequently called Sanders and told him not to use all of the drugs because of her concern the drugs did not look right.

{¶14} Detective Evans spoke with Appellant after he was released from the hospital. Detective Evans testified Appellant stated he drove his roommate's boyfriend's car to Mansfield and purchased a half gram from a dealer named "Yellow" with money he received from his mother. In addition, Detective Evans noted Appellant indicated he injected some of the drugs when he returned from Mansfield and that was the last he remembered. Detective Evans added Appellant stated Sanders wanted to make a trade for some drugs, but ultimately came to the trailer with $20. Detective Evans further testified Appellant recalled the drugs were on a tray and he packaged an amount less than $20 worth in a baggie for Sanders. The detective testified Appellant told him Sanders arrived at Appellant's trailer and left with the baggie of drugs.

{¶15} Audio recordings of Detective Evans' interviews with Danielle and Appellant were played for the jury.

{¶16} During her interview with Detective Evans, Danielle indicated Sanders came to the trailer after she and Appellant returned from Mansfield. Sanders gave her a $20 bill. A baggie of drugs was on a tray, ready for him. Sanders took the drugs and left. During his interview with Detective Evans Appellant stated he spoke with Sanders that day but was "not really sure" when Sanders "got his". Appellant was "pretty sure" Sanders

"only got like a 20, if even a whole 20". Appellant thought Sanders had $20 on him. When asked about what Sanders' "stuff" was in, Appellant stated he thought he "had a package laid out with [Danielle's] on the tray." He added he "put it all back in" the baggie.

{¶17} Detective Evans played three short videos retrieved from the surveillance camera of Donna D's restaurant. The three videos were taken on August 8, 2016. Detective Evans acknowledged the timestamp on the video was inaccurate as the surveillance system was not set for Eastern Standard Time. The first video depicts Sanders, wearing a black shirt and dark jeans, riding his bicycle south past Donna D's. The second video shows Sanders turning east, traveling through the parking lot of the Family Dollar Store towards Appellant's trailer. The final video reveals Sanders biking in a northwest direction, heading away from Appellant's trailer and toward his own residence. Sanders was wearing the same clothing in the video as he was wearing when his body was found.

{¶18} On cross-examination, Detective Evans indicated Danielle informed him she and Appellant purchased something with the $20 Sanders gave them in exchange for the drugs. Detective Evans reiterated Appellant told him the drugs were on a tray and he had placed them in a baggie which he subsequently gave to Sanders.

{¶19} Dr. Dale Thomae, the Ashland County Coroner, testified the Cuyahoga County Coroner, Dr. Todd Barr, performed the autopsy. Dr. Barr noted Sanders was a healthy, twenty-one year old male. The toxicology testing revealed a fentanyl analog in Sander's blood. Blood and urine samples were sent to a lab in Indianapolis to identify the specific analog involved. Based upon the Cuyahoga County Coroner's autopsy report, Dr. Thomae issued a narrative report and summary as well as a death certificate.

The death certificate listed the cause of death as "sudden cardio path due to deep ventricular arrhythmia and due to acute intoxication by Carfentanil." Dr. Thomae stated the estimated time of death was between 1:30 and 4:30 a.m. on August 9, 2016. Dr. Thomae noted the Carfentanil was still in Sanders' system, indicating recent usage of the drug. Dr. Thomae explained an individual can overdose on a small amount of Carfentanil.

**{¶20}** Jennifer Acurio, a forensic scientist with the Bureau of Criminal Investigations, tested three items recovered from Appellant's residence: a residue, brown liquid found in a syringe, and a marijuana pipe. The testing revealed the residue and the brown liquid were Carfentanil. The marijuana pipe contained a substance determined to be marijuana.

**{¶21}** After hearing all the evidence and deliberating, the jury found Appellant guilty of Counts 1 – 8 of the Indictment. The trial court ordered a pre-sentence investigation. At sentencing, the trial court merged the involuntary manslaughter and corrupting another with drugs charges. The state elected to have Appellant sentenced on the involuntary manslaughter conviction. The trial court sentenced Appellant to an aggregate term of imprisonment of ten years, advising Appellant the ten year prison term for the involuntary manslaughter conviction was mandatory time.

**{¶22}** It is from these convictions and sentence Appellant appeals, raising the following assignments of error:

I. APPELLANT'S CONVICTIONS FOR INVOLUNTARY MANSLAUGHTER, CORRUPTING ANOTHER WITH DRUGS, AND TRAFFICKING IN DRUGS WERE NOT SUPPORTED BY THE

SUFFICIENCY OF THE EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO (1) REQUEST A JURY INSTRUCTION PROHIBITING THE JURY FROM USING ANYTHING FROM THE STATEMENTS OF APPELLANT'S CO-DEFENDANT AGAINST HIM, (2) OBJECT TO THE MISCHARACTERIZATION OF TESTIMONY BY THE OFFICER WHO INTERVIEWED APPELLANT, AND (3) BRING TO THE COURT'S ATTENTION THAT A MANDATORY PRISON TERM WAS CONTRARY TO LAW ON THE INVOLUNTARY MANSLAUGHTER CONVICTION.

III. THE TRIAL COURT ERRED BY FAILING TO MERGE APPELLANT'S AGGRAVATED TRAFFICKING IN DRUGS CONVICTION WITH THE CONVICTION FOR INVOLUNTARY MANSLAUGHTER AND CORRUPTING ANOTHER WITH DRUGS.

IV. APPELLANT'S SENTENCE MUST BE REVERSED AS CONTRARY TO LAW AS NOTHING PERMITTED IMPOSITION OF A MANDATORY PRISON TERM ON THE INVOLUNTARY MANSLAUGHTER CONVICTION.

I

{¶23} In his first assignment of error, Appellant challenges his convictions for involuntary manslaughter, corrupting another with drugs, and trafficking in drugs as against the manifest weight of the evidence, and based upon insufficient evidence.

{¶24} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). Therein, the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id* at paragraph two of the syllabus.

{¶25} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered'." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶26} "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

{¶27} Appellant was convicted of involuntary manslaughter, in violation of R.C. 2903.04(A), which provides: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

{¶28} Appellant was also convicted of corrupting another with drugs, in violation of R.C. 2925.02(A)(3), which reads: "No person shall knowingly * * * [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent."

{¶29} The predicate offense for both involuntary manslaughter and corrupting another with drugs was aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), which states: "[n]o person shall knowingly *** [s]ell or offer to sell a controlled substance or a controlled substance analog."

{¶30} Appellant contends the evidence did not support he had anything to do with the aggravated trafficking of drugs sale to Sanders.

{¶31} The record reveals Appellant purchased $50 worth, a half of a gram, of what he believed to be heroin from a dealer named "Yellow" in Mansfield. Appellant used some of the drugs. Appellant placed a portion of the drugs back into the corner baggie in which the drugs had originally been packaged. Appellant admitted he "eyed out" the drugs rather than weighing an exact amount. He stated the amount Sanders purchased was not "even a whole [$]20" worth. He placed the baggie of drugs on a tray.

{¶32} Appellant spoke to Sanders that day and was aware Sanders planned to purchase some of the drugs when Appellant returned from Mansfield. The fact Appellant

was not physically present when Sanders arrived at his residence does not negate his actions in preparing the drugs for sale to Sanders.  Appellant had sold drugs to Sanders in the past.  Appellant knew Sanders was coming over to purchase drugs.

**{¶33}** Appellant further argues, "the evidence fails to support that Appellant's provision of a small amount of what he believed to be heroin to Sanders proximately caused Sander's [sic] death." Brief of Appellant at 16.

**{¶34}** Ohio courts have recognized "[t]he element of proximate cause is satisfied where the defendant, 'sets in motion a sequence of events that make the death of another a direct proximate and reasonably inevitable consequence'." *State v. Feltner*, 12th Dist. Butler No. CA2008–01–009, 2008–Ohio–5212, ¶ 12, quoting *State v. Lovelace*, 137 Ohio App.3d 206, 215 (1st Dist. 1999) (Internal quotations partially omitted). "It is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." *State v. Wells*, 12th Dist. Warren No. CA2016-02-009, 2017-Ohio-420, ¶ 35, citing *State v. Losey,* 23 Ohio App.3d 93, 96 (10th Dist. 1985). "The possibility of an overdose is a reasonably foreseeable consequence of the sale of heroin." *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶91.

**{¶35}** Further, the Ohio Supreme Court has held, "[w]e will not read the additional element of knowledge of the nature of the substance into R.C. 2925.03(A)(1), (5) or (7)." *State v. Patterson,* 69 Ohio St.2d 445, 447, 432 N.E.2d 802 (1982), *overruled in part on other grounds*.  In other words, the state is only required to prove beyond a reasonable

doubt the accused knowingly sold or offered to sell *a controlled substance. State v. Stover,* 11th Dist. Lake No. 2015–L–041, 2016–Ohio–1361, ¶ 14 (Emphasis added).

**{¶36}** As set forth supra, Appellant spoke with Sanders earlier in the day and knew Sanders wanted to purchase drugs from him. Appellant packaged approximately $20 worth of what he believed to be heroin for Sanders. Danielle informed Detective Evans Sanders came to the residence and purchased the drugs with a $20 bill.

**{¶37}** Jennifer Acurio, a forensic scientist from BCI, performed tests on some of the evidence in this case. Acurio tested State's Exhibit 17, a sample of residue found in the Luces' residence, and State's Exhibit 18, a brown liquid from a syringe from the Luces' residence, both of which were found to contain Carfentanil. Dr. Todd Barr, the Cuyahoga County Coroner, performed the autopsy of Sanders' body. Dr. Barr testified Sanders was a healthy twenty-one year old male. The toxicology testing showed there were indicators of a "fentanyl analog" in his blood. Because the Cuyahoga County Coroner's Office was not equipped to reach a conclusion on the specifics of said analog, the necessary samples were sent to AIT Laboratory in Indianapolis. The toxicology report from AIT indicated Carfentanil was found in Sanders' blood and urine.

**{¶38}** Dr. Barr told the jury Carfentanil is an analog of fentanyl. Dr. Barr concluded Sanders' cause of death was acute intoxication by Carfentanil. Dr. Barr noted any amount of Carfentanil can be lethal. Dr. Thomae declared Sanders' cause of death to be from "sudden cardiopath due to deep ventricular arrhythmia and due to acute intoxication by Carfentanil."

**{¶39}** Upon our review of the record, we find any rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found Appellant

knowingly furnished Sanders with the controlled substance and proximately caused Sanders' death as a direct result of selling the controlled substance to Sanders. We further find the trier of fact clearly did not lose its way and create such a manifest miscarriage of justice warranting the reversal of the judgment.

{¶40} Appellant's first assignment of error is overruled.

II

{¶41} In his second assignment of error, Appellant contends trial counsel was ineffective for failing to request an instruction prohibiting the jury from using his co-defendant's statements against him; failing to object to Detective Evans' mischaracterization of statements made by Appellant to him; and failing to bring to the trial court's attention the imposition of a mandatory prison term was contrary to law.

{¶42} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶43} Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052.  Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189.

{¶44} Initially, Appellant asserts trial counsel was ineffective for failing to request an instruction prohibiting the jury from using his co-defendant's statements against him.

{¶45} The trial court instructed the jury as follows:


You must decide separately the question of guilt or innocence of each of the two Defendants. If you cannot agree to verdict on both Defendants but can as to one, render a verdict as to the one whose guilty [sic] or innocence that you do agree.  You must separately consider the evidence applicable to each Defendant as though he or she is separately tried.  And you must state your findings as to each Defendant uninfluenced by your verdict as to the other Defendant. Tr. at 777.


{¶46} "[I]n a joint jury trial of two defendants, a defendant's Sixth Amendment right to confrontation is violated when the confession of a non-testifying co-defendant is

admitted at their joint trial, even when the trial court carefully instructed the jury that the confession could only be admitted against that co-defendant." *State v. Clayton*, 12th Dist. Warren No. CA2017-01-009, 2017-8538, citing *Bruton*, 391 U.S. at 126, 137, 88 S.Ct. 1620.

**{¶47}** The audio recordings admitted at trial were redacted prior to trial to delete any portions of Appellant's interview in which he referenced Danielle and any portions of Danielle's interview in which she referenced Appellant. We have listened to the audio recordings of Detective Evans' interviews with Appellant and Danielle. Neither Appellant nor Danielle mention the other in the portions of the interviews played for the jury. As such, we find *Bruton* is not applicable and trial counsel was not ineffective for failing to request such an instruction. This portion of Appellant's second assignment of error is overruled.

**{¶48}** Appellant also maintains trial counsel was ineffective for failing to object to Detective Evans' mischaracterization of statements made by Appellant to him. Assuming, arguendo, trial counsel was ineffective for failing to object to Detective Evans' misstatements, we find Appellant is unable to demonstrate a reasonable probability, but for this failure, the outcome of the trial would have been different. The jury heard Detective Evans' testimony as well as the audio recording of Appellant's interview with the detective. The jury could resolve any discrepancies between Detective Evans' trial testimony regarding Appellant's statements, and the actual recorded statements of Appellant when evaluating Detective Evans' testimony. Accordingly, we overrule this portion of Appellant's second assignment of error.

{¶49} We now turn to Appellant's assertion trial counsel was ineffective for failing to bring to the trial court's attention the imposition of a mandatory prison term was contrary to law. In light of our disposition of Appellant's fourth assignment of error, infra, and the fact the state concedes this argument, we sustain this portion of Appellant's second assignment of error.

{¶50} Appellant's second assignment of error is overruled in part, and sustained in part.

III

{¶51} In his third assignment of error, Appellant argues the trial court erred in failing to merge his conviction for aggravated trafficking in drugs with his convictions for involuntary manslaughter and corrupting another with drugs. Appellant submits the three offenses were committed by the same conduct, "the sale or transfer of drugs to Sanders", and with the same animus, "the intent to sell or transfer [C]arfentanil to Sanders, a felony". Brief of Appellant at p.24.

{¶52} R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as

to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶53}** In *State v. Ruff,* 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence,

**{¶54}** 1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import. *Id.* at para. 1 of syllabus.

**{¶55}** 2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable. *Id.* at para. 2 of syllabus.

**{¶56}** The *Ruff* Court further explained:

**{¶57}** A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance - in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation. *Id.* at ¶ 25.

**{¶58}** An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams,* 134 Ohio St.3d 482, 2012-

Ohio-5699, 983 N.E.2d 1245, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶59} Appellant was convicted of aggravated trafficking in drugs, in violation of in violation of R.C. 2925.03(A)(1) and (2); involuntary manslaughter, in violation of R.C. 2903.04(A); and corrupting another with drugs, in violation of R.C. 2925.02(A)(3). Utilizing the *Ruff* analysis, we find the offenses do not merge. Appellant committed aggravated trafficking when he travelled to Mansfield, purchased drugs, then returned to Ashland and prepared the drugs for sale to Sanders. Appellant committed the offense of corrupting another with drugs when he subsequently sold the drugs to Sanders. We find the offenses were committed separately in both time and location and were dissimilar in import as each act caused separate, identifiable harm. There was a significant passage of time which separated the events.

{¶60} Accordingly, Appellant's third assignment of error is overruled.

IV

{¶61} In his fourth assignment of error, Appellant asserts the trial court erred in sentencing him to a mandatory ten-year term of imprisonment on the involuntary manslaughter conviction. The state concedes the validity of Appellant's argument and we agree.

{¶62} Under certain circumstances, a prison term is mandatory for offenders convicted of involuntary manslaughter in violation of R.C. 2903.04(A). For example, R.C. 2929.13(F)(4) requires a mandatory sentence for "[a] felony violation of [R.C.] 2903.04 *

* * if the section requires the imposition of a prison term." R.C. 2903.04(D) requires a mandatory prison term "if the felony * * * that the offender committed or attempted to commit, that proximately resulted in the death of the other person * * * and that is the basis of the offender's violation of division (A) * * * of this section was a violation of division (A) or (B) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance." The underlying felony in this case is not R.C. 4511.19 or a substantially equivalent municipal ordinance.

{¶63} Additionally, R.C. 2929.13(F)(6) requires a mandatory prison term for an offender convicted of a first- or second-degree felony when he or she previously was convicted of or pleaded guilty to aggravated murder, murder, or any first- or second-degree felony. Appellant herein had no prior aggravated murder, murder, or first- or second-degree felony convictions.

{¶64} Based upon the foregoing, we sustain Appellant's fourth assignment of error, vacate his sentence for involuntary manslaughter, and remand the matter to the trial court for resentencing.

{¶65} The judgment of the Ashland County Court of Common Pleas is affirmed in part, vacated in part, and the matter remanded to the trial court for resentencing.

By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur